# EXHIBIT A

FILED

14 AUG 22 PM 3:10

KING COUNTY
SUPERIOR COURT CLERK
KENT, WA

## WASHINGTON STATE HUMAN RIGHTS COMMISION

JOSEPH SIDBURY,                      )         NO. 14-2-23608-5 KNT
           Plaintiff,      )
vs.                                  )
                      )         COMPLAINT
BOEING a Washington Corporation;     )
ROBERT RUSS ULRICH, Manager;         )
DAVID CARBON, and JERRY MILLS,       )
         Defendants.      )
_____)

      JOSEPH SIDBURY, Plaintiff (hereinafter Plaintiff) states as follows:

### I.

      At all times herein, BOEING (hereinafter defendant) was a Washington corporation, having paid all licenses herein, was licensed to do and doing business in the State of Washington and thereby subject to the jurisdiction of this Court.

      At all times herein, defendant ROBERT RUSS ULRICH (hereinafter Ulrich) manager, was an employee of defendant, was acting for and behalf of defendant, residing in the State of Washington, and thereby subject to the jurisdiction of this Court.

      At all times herein, Plaintiff was an employee of defendant, acting for and on behalf of defendant, residing in the State of Washington and therefore is subject to the jurisdiction of this Court.

### II. PARTIES

      Defendant is the employer of Plaintiff.

COMPLAINT PAGE - 1

                           JOSEPH SIDBURY, Pro Se
                           27928 22nd Ave. South
                           Federal Way, WA 98003
                           253-945-7550

Plaintiff has been employed 29 years by defendant is an employee of Boeing Everett Plant acting as a manager for 16 years, a K-Level, and special manager with two (2) employees. At the time of the incident herein, Plaintiff was a Manager on Special-Assignment 747-8.

Ulrich is an employee of defendant acting as a manager for and on behalf Boeing at the Everett Plant.

DAVID CARBON (hereinafter Carbon) was an employee of defendant, was acting for and on behalf of defendant, residing in the State of Washington, and thereby subject to the jurisdiction of this Court.

JERRY MILLS (hereinafter Mills) was an employee of defendant, was acting for and on behalf of defendant, residing in the State of Washington, and thereby subject to the jurisdiction of this Court.

### III. DESCRIMINATION

1.    Ulrich more often than not insulted Plaintiff in front of other personnel including two younger Caucasians who he later replaced Plaintiff with.

2.    Ulrich brought up to the EEOC that Ulrich would bring up Plaintiff's, age, ethnicity.

3.    Ulrich told Plaintiff he was "not needed" and "no value" as a 747-8 46/48 manager.

4.    Ulrich blamed Plaintiff for the unsafe condition although Plaintiff was not responsible for managing the crew and in spite of the fact that Plaintiff requested another individual to take a picture of the "safety moment". The photograph even showed Plaintiff was barely in the background having already exited the area. The photograph was provided to Ulrich.

COMPLAINT PAGE - 2                    JOSEPH SIDBURY, Pro Se
                                      27928 22nd Ave. South
                                      Federal Way, WA 98003
                                      253-945-7550

5.    Ulrich bypassed Plaintiff for younger managers to be given more visibility.

6.    Ulrich only "cherry picked" audits to best serve his interests.

7.    Washington's Law Against Discrimination, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967, prohibit discrimination and harassment in most workplaces.

8.    Anti-discrimination and harassment laws protect Plaintiff from being treated negatively in hiring/firing/layoff decisions, pay practices, promotional and job assignment decisions, training opportunities, etc. Plaintiff actually was in a protected class or status (e.g., race, gender, age, ethnicity, veteran status.  Defendant and Ulrich are also precluded from retaliating against an employee making discrimination or harassment claims and/or participating in a claim-triggered investigation.

Plaintiff is a veteran United States Air Force Commissioned Officer(captain), BS degree from North Carolina A&T(1976) and a MAS Aviation Management from Emibry-Riddle University (2006).

9.    Plaintiff was harassed and discriminated against; Ulrich's conduct was unwelcome; the harassment occurred because of Plaintiff's class or status; it affected the terms or conditions of employment.

10.    Plaintiff establishes discrimination by showing that Plaintiff was an actual or perceived member of a protected class, performing satisfactory work, and was subjected to an adverse employment action or treatment (fired, laid off, not promoted, denied a particular job assignment, harassed, etc.)

COMPLAINT PAGE - 3                    JOSEPH SIDBURY, Pro Se
                                      27928 22nd Ave. South
                                      Federal Way, WA 98003
                                      253-945-7550

11.     Ulrich's conduct and speech rises to the legal definition of being "hostile" and result in an adverse employment action against or other harm to the protected party, then that conduct and speech is usually considered definitive evidence of discrimination or harassment.

12.     Ulrich harassed, mocked, and ridiculed Plaintiff.  This conduct was intentional, severe, recurring and/or pervasive and interfered with Plaintiff's ability to perform his job. Further this is intimidating, offensive or abusive, a court or investigating agency will consider how often it occurred and the reaction it garnered, and ask how a "reasonable person" would characterize it.  It must be considered "across the line" not only on a subjective basis by the Plaintiff making the complaint, but also on an objective basis by "reasonable people."

3.     Ulrich created a "hostile work environment".

14.     While defendant has clear policies against harassment and discrimination, Ulrich chose to not follow and enforce protocols and procedures.

5.     Plaintiff reported complaints in good faith to swiftly and adequately responded to and resolve this situation.   However, defendant did not properly   investigate Plaintiff's substantiated complaints and legitimate issues.

IV.

Under Title VII, the ADA, and the ADEA, it is illegal to discriminate in any aspect of employment, including:

- harassment on the basis of race, color, religion, sex, national origin, disability, or age;
- retaliation against an individual for filing a charge of discrimination, participating in an investigation, or opposing discriminatory practices;

COMPLAINT PAGE - 4                              JOSEPH SIDBURY, Pro Se
                                                27928 22nd Ave. South
                                                Federal Way, WA 98003
                                                253-945-7550

- employment decisions based on stereotypes or assumptions about the abilities, traits, or performance of individuals of a certain sex, race, age, religion, or ethnic group, or individuals with disabilities; and

**Age Discrimination in Employment Act**

The ADEA's broad ban against age discrimination also specifically prohibits:

- statements or specifications in job notices or advertisements of age preference and limitations. An age limit may only be specified in the rare circumstance where age has been proven to be a *bona fide* occupational qualification (BFOQ);
- discrimination on the basis of age by apprenticeship programs, including joint labor-management apprenticeship programs; and
- denial of benefits to older employees. An employer may reduce benefits based on age only if the cost of providing the reduced benefits to older workers is the same as the cost of providing benefits to younger workers.

Under (RCW 49.60), Plaintiff has the right to be free from discrimination at work, Discrimination occurs whenever we treat someone differently and deny him or her equal treatment or access because of: their membership in a **Protected Class**.

Ray Goforth, SPEEA'S union executive director, said in a statement that the movement of work "is merely a pretext for the wholesale purge of Boeing's older workforce." SPEEA used employee information provided by the company to the union to analyze the retention rankings and determined that the company had changed the criteria, making older workers more vulnerable to layoffs, Goforth said in an interview.

COMPLAINT PAGE - 5                    JOSEPH SIDBURY, Pro Se
                                      27928 22nd Ave. South
                                      Federal Way, WA 98003
                                      253-945-7550

"They're laying off older employees — 10, 20, 30 years of experience here — moving their job and then hiring younger employees with less experience," Goforth said. "This is precisely what the Age Discrimination in Employment Act was designed to prevent."

SPEEA represents more than 21,000 Boeing employees in Washington state — more than a quarter of the company's workforce in the state. SPEEA has also encouraged individual employees who feel discriminated against to file suits against Boeing with the EEOC, Goforth said.   A jury ordered McDonnell Douglas to pay $28 million to a former employee who sued the company for retaliation after he filed an age and racial discrimination complaint against the former aircraft maker. After a five-week trial, the Los Angeles County Superior Court jury awarded Gerald Verdine, 58, of Carson $2 million in compensatory damages and $26 million in punitive damages stemming from his 1996 lawsuit against the company, which was acquired last year by Seattle-based Boeing Co.

"The jury told McDonnell Douglas that this conduct was reprehensible and that they should never do this to another employee," said Larry Feldman, Verdine's attorney. McDonnell Douglas attorney John Golper could not be reached for comment. On his 30th anniversary at the company's Long Beach manufacturing plant, Verdine was fired without warning, Feldman said. Verdine, who is black, then sued the company for race discrimination and retaliation. The March 1996 termination came about four years after Verdine filed a complaint with the federal Equal Employment Opportunity Commission, claiming he had been laid off in spring 1992 because of his age and race. Feldman said the company settled that claim and reinstated Verdine after vowing not to retaliate against him.  See Exhibit 9. attached hereto.

## V. HARASSMENT/BULLYING

1.     Ulrich first manager to perform a special audit in ten (10) days.

2.     Moved Plaintiff to A-Deck although there was a missing head count.

COMPLAINT PAGE - 6

JOSEPH SIDBURY, Pro Se
27928 22nd Ave. South
Federal Way, WA 98003
253-945-7550

3.      Ulrich removed Plaintiff from A-Deck less than thirty (30) days after Plaintiff filed a company EEO Complaint on or about June 2013.

4.      Ulrich gave Plaintiff a "written verbal warning" for not returning a phone call.

5.      Several company members have witnessed Ulrich shouting, using inappropriate language to say this is what he wanted.  See Interview below:

> ". . . . stated that if Ulrich doesn't like someone's work he will point it out to them in a demeaning way and in front of others.  . . . . has done this to Sidbury, as well.  . . . . does not know why Sidbury is harassed by Ulrich."

> ". . . . was aware that On the day of the safety issue he heard that when Ulrich found out about the safety issue Ulrich ran to HR to cause trouble for Sidbury Johnson was demoted from his supervisor position.  . . . . believes Johnson is trying to get reinstated back to that position."

> ". . . . has been a manager in the past and has not seen any managers treat the managers below them in the way that Ulrich treats his managers.  . . . . stated that Ulrich has a different management style in that he will berate his staff in front of the peers.  . . . . does not believe this is appropriate."

> ". . . . has heard Ulrich state to Sidbury that Sidbury doesn't know what he's doing and doesn't know his job.  . . . . stated this is very disrespectful of Sidbury."

6.      Ulrich would cut off Plaintiff's conversation to tell Plaintiff what would be done rather than considering what was the "Statement of Work" priorities for the day.

## VI. DEMOTION SUSPENSION

1.      Plaintiff was suspended July 2013 with a loss of pay for witnessing an unsafe act.

2.      Plaintiff was being accountable although the crew was in-work under another manager.

3.      Plaintiff informed area manager that the crew was unsafe and at the time advised that Plaintiff should return to his office.

COMPLAINT PAGE - 7

JOSEPH SIDBURY, Pro Se
27928 22nd Ave. South
Federal Way, WA 98003
253-945-7550

4.      "The right of an employee to oppose discrimination in the workplace is fundamental," said Mary Jo O'Neill, regional attorney for the EEOC's Phoenix District Office. "Employees should be able to report discrimination without fearing that their employers will make the situation worse by retaliating against them."

5.      Plaintiff was not in violation of crew safety, but was held accountable.

## VII. SAFETY

1.      The responsible parties failed to ensure safety in engineering and manufacturing.

2.      The responsible parties should have implemented safety coordinated proper disposition instruction or operation to ensure safety and successful outcome resulting when the 747-8 46/48 section in control – coded 311 received a rework instruction required the crew to remove/replace the 48 section.

3.      Failure to remove/replace 48 section in order to replace a major assembly line-stopping component the pressure-dome that located inside the section this type of rework was to happen for with five units (airplanes), with a damaged pressure-dome already attached to the 48 section.

4.      Rather than using the Boeing Process Instructions (BPI) Ulrich made it clear that he wanted things the way he wanted it.  This was difficult to understand if this was his own personal decision and not company directives.

5.      Plaintiff was held accountable for a safety issue not under his care, custody or control.  Nonetheless, Plaintiff requested another employee to photograph it and it was provided to Ulrich.  See Interviews below:

> "He then saw Joe Sidbury who was a supervisor and pointed the safety issue out to him.  Sidbury told him to take a photograph of what was happening.  He was reluctant to do this but because the supervisor told him to do that he did take a photograph of the incident."

COMPLAINT PAGE - 8

JOSEPH SIDBURY, Pro Se
27928 22nd Ave. South
Federal Way, WA 98003
253-945-7550

"When the crane crew arrived to move the 48 section they did what they had done in the past and that was to hold a ladder at the end of the 48 section and one person would climb up it to secure it to the crane.  As far as he knows, they have no safety procedures for doing this."

"There is a stand down safety plan that had been implemented before this incident.  There have been one or two people who had fallen and died as a result of the injuries.  Due to this, Boeing has been concentrating on fall and protection issues."

## VIII.  ATTACHMENTS

1.     Interview 5-23-14

2.     Interview 7-31-14

3.     (a)     Interview 8-4-14

       (b)     Interview 8-4-14

       (c)     Interview 8-4-14

3.     Intake Questionnaire

4.     Photographs of unsafe area

5.     Appeal

6.     Time Off From Work  Notice

7.     Employment intake resume'

8.     Emails

9.     McDonald Douglas lawsuit

10.    Notice of Commission Action

11.    Written Complaint

## IX.  RELIEF REQUESTED

JOSEPH SIDBURY, Plaintiff herein, requests the following:

1.     Back pay include managerial raise percentile, & EIP $_____

2.     Return to prior status

COMPLAINT PAGE - 9                          JOSEPH SIDBURY, Pro Se
                                            27928 22nd Ave. South
                                            Federal Way, WA 98003
                                            253-945-7550

3.    Ulrich should be removed as a manager, supervisor or any other position in

charge of any other personnel.

4.    Remove any and all demotions, complaints, etc. concerning this issue.

5.    Punitive damage as it relates to stress & humiliation therapy
6.    Leadership(747-8) reprimanded that allowed this action to happen
7.    Legal fees incurred during attorney search (intakes, interviews, investigations &
       processing)

And other and such further relief as the Court deems just and equitable.

DATED this _____ day of August, 2014

_____

JOSEPH SIDBURY, PLAINTIFF, PRO SE

COMPLAINT PAGE - 10                    JOSEPH SIDBURY, Pro Se
                                       27928 22nd Ave. South
                                       Federal Way, WA 98003
                                       253-945-7550

**ATTACHMENT 1**

# JOE PURCELL COMPANY

14-044P
May 23, 2014

### CONFIDENTIAL
### ATTORNEY/CLIENT WORK PRODUCT
### INTERVIEW MEMO

TO:      Susan Mindenbergs

FROM:   Joe Purcell

RE:      ██████ ██████████ ████████

On May 19, 2014 at 10:34 a.m. I received a telephone call from ██████████████. His telephone number is (4██6) 2██████.

After introductions I explained to Mr. ██████████s that I wished to interview him regarding Joseph Sidbury. ████████ stated that he had no objections to the interview.

████████ is currently an employee at the Boeing Company in Everett, Washington, working on the flight line. He did work under the supervision of Russell Ulrich when Ulrich worked on the flight line. ████████ stated he was a supervisor directly below Ulrich.

During the meetings that they would have the beginning of their shifts all of the supervisors under Ulrich would be in attendance. Ulrich would ask the supervisors questions to insure that they were meeting their schedules.

At the time, ████████ was the only ████ supervisor on the shift. When Ulrich would get to him Ulrich would ask him numerous questions. It appeared to him that Ulrich was picking on him.

He stated that when Ulrich began asking him more questions than the other supervisors he confronted Ulrich. From that time on, Ulrich continued to ask him more questions than the other supervisors. He believed that because he stood up to Ulrich that he would be a target as a result of saying something to Ulrich.

**CONSULTATION · INVESTIGATION · RESEARCH · SURVEILLANCE**

819 Driftwood Ln · Edmonds WA 98020
Office (425) 778 6048 · Fax (425) 778 1828 · Mobile (206) 499 4342
Email joe@joepurcellco.com · Website www.joepurcellco.com

WA LIC 601 720 718

14-044P
Interview Memo - ▓▓▓▓▓▓▓▓▓▓▓
Page 2

None of the other supervisors would confront Ulrich in any manner. It was his belief that these supervisors wanted to remain in their position and if they said something Ulrich would find a way to demote them.

He felt that Ulrich treated him in front of his peers in a way that wasn't professional. When he talked to Ulrich about this Ulrich told him to shut up.

He was put on a performance plan and met the conditions of the plan.

Ulrich also moved him to a different area and put a white male in his position.

There was another ▓▓▓k male who worked a different shift but he would see this black male who was a supervisor during the tie-in meetings. That black male was Ervin Beachum. During these meetings Ulrich would ask Beachum a lot of questions also. He believed that Ulrich was doing this because of their race.

At one time Ulrich told him that he didn't know what he was doing even though he passed the performance plan.

He again stated that Ulrich humiliated Beachum and him in front of the other supervisors. He believed that there were other supervisors that were doing worse than he was but yet Ulrich treated those supervisors differently.

He did not think that Beachum stood up to Ulrich. The reason for this is that Beachum has been a manager for 20 years and if he had stood up to Ulrich there was a chance he would get demoted. Having been a supervisor as long as he was, he would not have the certs. that he needed to go back to a non-supervisory position.

He knows that Beachum was reassigned to the same area as Ulrich. It was his understanding that Beachum was trying to get into another position and after being in the new position with Ulrich for a period of time he was finally moved to the position that he wanted.

He was demoted because there was an investigation started on him because of his crew. There were two things that were investigated. One was favoritism and the second was being out of his area.

He stated that he did show favoritism to one black employee and one Asian employee. One of them was a male and the other was a female.

He did leave the area at times because he needed to get parts, and other things required of a supervisor.

When he went into the hearing Ulrich, a human resource person and another manager were the ones that conducted the meeting. They did find that he had violated rules and as

14-044P
Interview Memo - ▓▓▓▓▓▓▓▓▓▓
Page 3

a result of it he was demoted from his supervisory position. He also received five days off.

He is not aware of any other supervisors who have been written up for favoritism, or for leaving the area. He did not know who turned him in. Ulrich said that his crew initiated the investigation.

At one time he filed a report with Human Resources because he had been called a porch manager. He stated this is a manager who stays in an area for a long period of time. He stated that the complaint was found unfounded by Human Resources.

He is aware that under Ulrich's supervision there were managers who drank on the job, would go to the casino, and at least one who had reported his laptop stolen when it hadn't been stolen. As far as he knows, nothing has happened to these managers.

He also went to Boeing Ethics and made a complaint regarding racism. He stated nothing happened as a result of that complaint. Ethics told him that there was not enough evidence to substantiate the complaint.

He does talk to Sidbury and did tell Sidbury that he needed to be careful working under Ulrich. He stated that Sidbury's nature is similar to his in that if Ulrich were to try to humiliate Sidbury in front of his peers, Sidbury would stand up to him. He told Sidbury that if he stood up to Ulrich that Ulrich would find a way to demote him.

He was aware that Sidbury was demoted but was not aware of the circumstances. He believed that Sidbury was demoted due to his race. He did not know if any other supervisors were demoted regarding the incident that resulted in Sidbury being demoted.

At 11:07 a.m. ▓▓▓▓▓▓▓▓ had nothing further to add and this interview concluded.


JP:nbc

**ATTACHMENT 2**

**14-044P**
July 31, 2014

<div align="center">

**CONFIDENTIAL**
**ATTORNEY/CLIENT WORK PRODUCT**
**INTERVIEW MEMO**

</div>

TO:        Susan Mindenbergs

FROM:    Joe Purcell

RE:         ████████ Interview
             ████████████████
             ████████████████

On March 13, 2014 at 5:13 p.m., I received a telephone call from ████████. His telephone number is (425) 367-3694. After introductions I advised Mr. Harper that I had questions regarding the moving of a pressure dome and other questions regarding Joseph Sidbury. Mr. Harper had no objections to being interviewed. I then asked him questions and the following are his responses.

He is employed at Boeing at the Everett plant in the 48-46 section. He is not sure of the date but does remember that they had to unjoin a 48 section from a 46 section and put it into majors to re-drill it. It then had to be put back in a fixture. He was aware that the crane crew had said that it would be 20 minutes before they would be able to move it.

When the crane crew arrived to move the 48 section they did what they had done in the past and that was to hold a ladder at the end of the 48 section and one person would climb up it to secure it to the crane. As far as he knows, they have no safety procedures for doing this.

At the time, his supervisor was Rick Johnson. Johnson had told him more than once that Johnson's supervisor Russ Ulrich had it out for Johnson and Sidbury. He had also heard from others that Ulrich was gunning for Johnson and Sidbury. He felt that Ulrich is a retaliatory type person.

**14-044P**
Interview Memo - Randal ~~Harper~~
Page 2

He stated that Ulrich was instrumental in giving him a day off and eventually he was able to transfer out of the section on a lateral pay grade.

On the day of the safety issue he heard that when Ulrich found out about the safety issue Ulrich ran to HR to cause trouble for Sidbury and Johnson.

He was aware that Johnson was demoted from his supervisor position. He believes Johnson is trying to get reinstated back to that position.

He knows that there is a personnel conflict in Ulrich's section. He stated that nobody likes Ulrich.

Even if you are one of Ulrich's favorites you are not safe. He stated that one of the favorites of Ulrich had gotten into Ulrich's face because that person wanted out of the shop. Rather than moving that person, Ulrich moved him, ~~████~~, instead.

On the day of the incident he believes that Sidbury was acting supervisor but not for his deck. It was also his understanding that Sidbury told the safety person to get a camera and take a photograph. He then stated that he thought that Johnson was the manager of A and B deck that day, and does not know what deck Sidbury was the supervisor of.

He does not know if an incident report was written. He did not see one.

He was interviewed by a Boeing investigator. The investigator wrote a report and sent it to HR and Safety. It was a handwritten statement, which he signed. He did not receive a copy of the statement.

He again stated that Ulrich does not like Sidbury and Johnson. He also states that Ulrich acts like "I'm God, and do as I say."

He does not know why Ulrich does not like Johnson and Sidbury. He stated that Johnson is white and Sidbury is black. He does not believe that race or age has anything to do with why Ulrich does not like Sidbury and Johnson.

He was aware that on the weekend prior to this incident, when Ulrich was not working, that there was no scaffolding put around the dome when it was put in temporary. He stated that it wasn't unusual for this to be done. He also stated that because the dome did not have any scaffolding around it, Ulrich would have noticed that when he returned to work on Monday.

There were no injuries as a result of the ladder being used on the day of the incident.

He did not believe there was a stand down issued prior to the incident but that it was instituted afterward.

**14-044P**
Interview Memo - ████████████
Page 3

He does know that Tony Costantino who is the safety officer did take a photograph and gave it to Ulrich who took it to HR. Again, he stated that it was his understanding that Sidbury asked Costantino to take the photograph.

He is not aware of any time that Sidbury has ever mistreated or disobeyed Ulrich or the 747-8 leadership. He describes Sidbury as a really nice guy and a good guy to work for.

He is not aware of any other issues between Sidbury and Ulrich.

He again stated that Ulrich does not like Sidbury and Johnson, but does not believe that it is due to race or age. Again, he stated that Ulrich is not liked by the employees in the section.

At 5:36 p.m. ████r had nothing further to add and this interview concluded.


JP:nbc

14-044P
July 31, 2014

**CONFIDENTIAL**
**ATTORNEY/CLIENT WORK PRODUCT**
**INTERVIEW MEMO**

TO:          Susan Mindenbergs

FROM:       Joe Purcell

RE:          ████████ Interview

On March 14, 2014 at 1:40 p.m., I contacted █████ █████ at telephone number (425) 212-7728. After introductions I explained to her that I wanted to ask her questions regarding an incident that had occurred at the Everett Boeing plant, which involved Joseph Sidbury. █████████ had no objections to being interviewed and the following are her responses.

█████ is aware that Mr. Sidbury is filing a suit against his boss. █████ believes the suit is in regards to the way the boss, Russ Ulrich treats him. █████ has been present when Ulrich has "dressed down" Sidbury, Johnson and other managers. The supervisor who recently got "dressed down" was Rick Johnson.

█████ has been a manager in the past and has not seen any managers treat the managers below them in the way that Ulrich treats his managers. █████ stated that Ulrich has a different management style in that he will berate his staff in front of the peers. She does not believe this is appropriate.

Recently, Ulrich has stopped dressing down subordinates and is being more careful when talking to the subordinates. █████ stated he is not being the way that he was in the past.

█████ did not see any difference in the way Ulrich treated Sidbury and Johnson. Ulrich would ask them a question and when they went to answer he would not allow them to fully answer his question but would interrupt them.

14-044P
Interview Memo – ████████████
Page 2

On the day of the incident in which the pressure dome was moved ███ was in the department but was not involved in the movement of the pressure dome nor did she see any of the events surrounding the movement.

███ has heard Ulrich state to Sidbury that Sidbury doesn't know what he's doing and doesn't know his job. ███ stated this is very disrespectful of Sidbury.

███ stated there is quite a bit of employee movement around the area as far a people transferring to a different section. It seems like no matter what you do it's not good enough for Ulrich. ███ stated that the morale in the shop is very bad.

Prior to Ulrich taking over as the manager everybody used to work together. Now, everybody is on edge and do not work together like they used to.

Ulrich does not want employees to take time off. He is reluctant to let them have the time off even though they may have time on the books.

███ has been in the section for six years and, as previously stated, initially everyone worked together. Now people do not work together and just want to get out of there at the end of the day. ███ again stated that morale is very low and this is due to how Ulrich treats everyone.

███ again stated that Ulrich is disrespectful to everyone and Mr. Sidbury is not singled out.

At 1:55 p.m. ████s had nothing further to add and this interview concluded.

JP:nbc

14-044P
July 31, 2014

**CONFIDENTIAL**
**ATTORNEY/CLIENT WORK PRODUCT**
**INTERVIEW MEMO**

TO:          Susan Mindenbergs

FROM:        Joe Purcell

RE:           Interview

On March 19, 2014 at 3:58 p.m., I received a telephone call from ███████ ████████. His telephone number is (425) 308-4809. After introductions I explained to ████████ that I wished to ask him some questions regarding an incident that had occurred at the Everett Boeing plant in May 2013. ████████ had no objections to be interviewed. I then asked him questions and the following are his responses.

On the day in question while at work, a person from the area where he worked flagged him down and said that he should see what was going on. He walked to an area where a pressure dome was and observed two or three people holding a ladder and someone was on top of the ladder. He immediately went to the shift supervisor, Rick Johnson, to tell him of the safety issue.

He did tell Johnson what was happening and Johnson told him that he didn't have time to talk about it and he would talk to the people at a later time. Johnson then told him to leave.

He then saw Joe Sidbury who was a supervisor and pointed the safety issue out to him. Sidbury told him to take a photograph of what was happening. He was reluctant to do this but because the supervisor told him to do that he did take a photograph of the incident.

14-044P
Interview Memo - ████████████
Page 2

Joe Sidbury is the supervisor of him and another person by the name of Mary. Sidbury is referred to as a business manager.

He did take the photograph to a safety council meeting on the Wednesday after the incident. He gave the photograph to Dana Henry. He also showed the photograph to the supervisor above Sidbury and Johnson whose name is Robert, but goes by Russ, Ulrich.

It is his understanding that after the incident Sidbury was demoted and suspended for several days. Other people were also suspended.

He does not believe that Sidbury took any part in the decision to use the ladder at the pressure dome. Sidbury was not the manager of the A deck area that day, but was his immediate manager.

He did not write an incident report but believes that Ulrich wrote a report. He knows that it has been reported that he is the one that made the complaint and that is not correct. He does not know who complained about the incident to Ulrich.

There is a stand down safety plan that had been implemented before this incident. There have been one or two people who had fallen and died as a result of the injuries. Due to this, Boeing has been concentrating on fall and protection issues.

He has not observed Sidbury mistreat or disobey Ulrich or any of the other 747-8 leadership. In what he has observed, Sidbury will speak up if he sees something that is wrong.

He described Ulrich as a person that is not nice to anyone. Ulrich fakes being nice but isn't. Ulrich has been in the unit 18 months and since he's been in the unit there has been a turnover of seven supervisors.

He stated that if Ulrich doesn't like someone's work he will point it out to them in a demeaning way and in front of others. He has done this to Sidbury, as well. He does not know why Sidbury is harassed by Ulrich.

He has noted that the only people that Ulrich does not harass are the women in the section.

He himself has been "grilled" in front of his co-workers. He feels that Ulrich manages by bullying.

He stated that he ██████ and one time while he and Ulrich were inspecting employees' toolboxes Ulrich noted a picture of a guy on a toolbox. Ulrich made the comment, "Why would a person have a picture of a ███ on his toolbox?" He felt that Ulrich was making a comment about him being ███.

14-044P
Interview Memo - Tony Costanzo
Page 3

He has been diagnosed with fibromyalgia, chronic back problems and has a glass eye. Due to these medical issues he takes approximately four days a month off on Family Leave. Ulrich has made comments to him about the amount of time that he takes off on Family Leave. He advised Ulrich that Ulrich needs to talk to his doctor or the company because he has nothing to do with the amount of time that he takes off. He believes one reason why Ulrich harasses him is because of the amount of family leave that he uses each month.

He is being moved to a different area in the near future.

He stated that Ulrich has also made comments to others about him being gay but he doesn't remember what was said or who it was said to.

One time during a meeting Ulrich told a supervisor to go grab an employee by the throat and squeeze it. He did not go into detail as to why Ulrich had told this supervisor to do that to an employee.

He is aware that Ulrich harasses people over the age of 50 because Boeing is trying to get all of those people to leave. The reason is, Boeing can hire people at a substantially less wage and it takes the new employees ten years to advance to the wage of the current 50-year-old people. He stated this is known throughout Boeing that they want the 50 and above old people to leave.

He has not heard Ulrich state anything negative in regards to anyone's race. As previously stated, Ulrich made the one comment about the male photo on a toolbox in his presence, and appears to be trying to make anyone over the age of 50 leaves the employment of Boeing.

Costanzo did inquire as to who would have access to this interview report. He was advised that an interview memo would be provided to Susan Mindenbergs for her information. Costanzo did state he was concerned that Boeing not receive a copy of the memo as he may have mentioned something during the interview that Boeing did not want him to say. He could not be specific in what that might have been.

Costanzo had nothing further to add and this interview concluded at 4:28 p.m.


JP:nbc

ATTACHMENT 3

14-044P
August 4, 2014

<div align="center">

**CONFIDENTIAL**
**ATTORNEY/CLIENT WORK PRODUCT**
**INTERVIEW MEMO**

</div>

TO:        Susan Mindenbergs

FROM:    Joe Purcell

RE:         ███████████

On March 14, 2014 at 1:40 p.m., I contacted ████████ at telephone number (4██) ███████. After introductions I explained to her that I wanted to ask her questions regarding an incident that had occurred at the Everett Boeing plant, which involved Joseph Sidbury. ████████ had no objections to being interviewed and the following are her responses.

She is aware that Mr. Sidbury is filing a suit against his boss. She believes the suit is in regards to the way the boss, Russ Ulrich treats him. She has been present when Ulrich has "dressed down" Sidbury, Johnson and other managers. The supervisor who recently got "dressed down" was Rick Johnson.

She has been a manager in the past and has not seen any managers treat the managers below them in the way that Ulrich treats his managers. She stated that Ulrich has a different management style in that he will berate his staff in front of the peers. She does not believe this is appropriate.

Recently, Ulrich has stopped dressing down subordinates and is being more careful when talking to the subordinates. She stated he is not being the way that he was in the past.

She did not see any difference in the way Ulrich treated Sidbury and Johnson. Ulrich would ask them a question and when they went to answer he would not allow them to fully answer his question but would interrupt them.

**14-044P**
Interview Memo - ▇▇▇▇▇▇▇
Page 2

On the day of the incident in which the pressure dome was moved she was in the department but was not involved in the movement of the pressure dome nor did she see any of the events surrounding the movement.

She has heard Ulrich state to Sidbury that Sidbury doesn't know what he's doing and doesn't know his job. She stated this is very disrespectful of Sidbury.

She stated there is quite a bit of employee movement around the area as far a people transferring to a different section. It seems like no matter what you do it's not good enough for Ulrich. She stated that the morale in the shop is very bad.

Prior to Ulrich taking over as the manager everybody used to work together. Now, everybody is on edge and do not work together like they used to.

Ulrich does not want employees to take time off. He is reluctant to let them have the time off even though they may have time on the books.

She has been in the section for six years and, as previously stated, initially everyone worked together. Now people do not work together and just want to get out of there at the end of the day. She again stated that morale is very low and this is due to how Ulrich treats everyone.

She again stated that Ulrich is disrespectful to everyone and Mr. Sidbury is not singled out.

At 1:55 p.m. ▇▇▇▇ had nothing further to add and this interview concluded.

JP:nbc

**14-044P**
August 4, 2014

<div align="center">

**CONFIDENTIAL**
**ATTORNEY/CLIENT WORK PRODUCT**
**INTERVIEW MEMO**

</div>

TO:       Susan Mindenbergs

FROM:   Joe Purcell

RE:       

On March 19, 2014 at 3:58 p.m., I received a telephone call from ████████████████. His telephone number is (███) ███████. After introductions I explained to ███████ that I wished to ask him some questions regarding an incident that had occurred at the Everett Boeing plant in May 2013. ███████████ had no objections to be interviewed. I then asked him questions and the following are his responses.

On the day in question while at work, a person from the area where he worked flagged him down and said that he should see what was going on. He walked to an area where a pressure dome was and observed two or three people holding a ladder and someone was on top of the ladder. He immediately went to the shift supervisor, Rick Johnson, to tell him of the safety issue.

He did tell Johnson what was happening and Johnson told him that he didn't have time to talk about it and he would talk to the people at a later time. Johnson then told him to leave.

He then saw Joe Sidbury who was a supervisor and pointed the safety issue out to him. Sidbury told him to take a photograph of what was happening. He was reluctant to do this but because the supervisor told him to do that he did take a photograph of the incident.

**14-044P**
Interview Memo - ▓▓▓▓▓▓▓▓
Page 2

Joe Sidbury is the supervisor of him and another person by the name of ▓▓▓▓. Sidbury is referred to as a business manager.

He did take the photograph to a safety council meeting on the Wednesday after the incident. He gave the photograph to Dana Henry. He also showed the photograph to the supervisor above Sidbury and Johnson whose name is Robert, but goes by Russ, Ulrich.

It is his understanding that after the incident Sidbury was demoted and suspended for several days. Other people were also suspended.

He does not believe that Sidbury took any part in the decision to use the ladder at the pressure dome. Sidbury was not the manager of the A deck area that day, but was his immediate manager.

He did not write an incident report but believes that Ulrich wrote a report. He knows that it has been reported that he is the one that made the complaint and that is not correct. He does not know who complained about the incident to Ulrich.

There is a stand down safety plan that had been implemented before this incident. There have been one or two people who had fallen and died as a result of the injuries. Due to this, Boeing has been concentrating on fall and protection issues.

He has not observed Sidbury mistreat or disobey Ulrich or any of the other 747-8 leadership. In what he has observed, Sidbury will speak up if he sees something that is wrong.

He described Ulrich as a person that is not nice to anyone. Ulrich fakes being nice but isn't. Ulrich has been in the unit 18 months and since he's been in the unit there has been a turnover of seven supervisors.

He stated that if Ulrich doesn't like someone's work he will point it out to them in a demeaning way and in front of others. He has done this to Sidbury, as well. He does not know why Sidbury is harassed by Ulrich.

He has noted that the only people that Ulrich does not harass are the women in the section.

He himself has been "grilled" in front of his co-workers. He feels that Ulrich manages by bullying.

He stated that he is gay and one time while he and Ulrich were inspecting employees' toolboxes Ulrich noted a picture of a guy on a toolbox. Ulrich made the comment, "Why would a person have a picture of a guy on his toolbox?" He felt that Ulrich was making a comment about him being gay.

14-044P
Interview Memo – ██████████
Page 3

He has been diagnosed with fibromyalgia, chronic back problems and has a glass eye. Due to these medical issues he takes approximately four days a month off on Family Leave. Ulrich has made comments to him about the amount of time that he takes off on Family Leave. He advised Ulrich that Ulrich needs to talk to his doctor or the company because he has nothing to do with the amount of time that he takes off. He believes one reason why Ulrich harasses him is because of the amount of family leave that he uses each month.

He is being moved to a different area in the near future.

He stated that Ulrich has also made comments to others about him being gay but he doesn't remember what was said or who it was said to.

One time during a meeting Ulrich told a supervisor to go grab an employee by the throat and squeeze it. He did not go into detail as to why Ulrich had told this supervisor to do that to an employee.

He is aware that Ulrich harasses people over the age of 50 because Boeing is trying to get all of those people to leave. The reason is, Boeing can hire people at a substantially less wage and it takes the new employees ten years to advance to the wage of the current 50-year-old people. He stated this is known throughout Boeing that they want the 50 and above old people to leave.

He has not heard Ulrich state anything negative in regards to anyone's race. As previously stated, Ulrich made the one comment about the male photo on a toolbox in his presence, and appears to be trying to make anyone over the age of 50 leaves the employment of Boeing.

██████████ did inquire as to who would have access to this interview report. He was advised that an interview memo would be provided to Susan Mindenbergs for her information. ██████████ did state he was concerned that Boeing not receive a copy of the memo as he may have mentioned something during the interview that Boeing did not want him to say. He could not be specific in what that might have been.

██████████ had nothing further to add and this interview concluded at 4:28 p.m.


JP:nbc

14-044P
August 4, 2014

**CONFIDENTIAL**
**ATTORNEY/CLIENT WORK PRODUCT**
**INTERVIEW MEMO**

TO:       Susan Mindenbergs

FROM:    Joe Purcell

RE:      

On March 13, 2014 at 5:13 p.m., I received a telephone call from ▮▮▮▮▮▮▮  His telephone number is (▮▮) ▮▮▮▮▮.  After introductions I advised ▮▮▮▮▮▮ that I had questions regarding the moving of a pressure dome and other questions regarding Joseph Sidbury.  ▮▮▮▮▮▮▮ had no objections to being interviewed.  I then asked him questions and the following are his responses.

He is employed at Boeing at the Everett plant in the 48-46 section.  He is not sure of the date but does remember that they had to unjoin a 48 section from a 46 section and put it into majors to re-drill it.  It then had to be put back in a fixture.  He was aware that the crane crew had said that it would be 20 minutes before they would be able to move it.

When the crane crew arrived to move the 48 section they did what they had done in the past and that was to hold a ladder at the end of the 48 section and one person would climb up it to secure it to the crane.  As far as he knows, they have no safety procedures for doing this.

At the time, his supervisor was Rick Johnson.  Johnson had told him more than once that Johnson's supervisor Russ Ulrich had it out for Johnson and Sidbury.  He had also heard from others that Ulrich was gunning for Johnson and Sidbury.  He felt that Ulrich is a retaliatory type person.

14-044P
Interview Memo - ████████
Page 2

He stated that Ulrich was instrumental in giving him a day off and eventually he was able to transfer out of the section on a lateral pay grade.

On the day of the safety issue he heard that when Ulrich found out about the safety issue Ulrich ran to HR to cause trouble for Sidbury and Johnson.

He was aware that Johnson was demoted from his supervisor position. He believes Johnson is trying to get reinstated back to that position.

He knows that there is a personnel conflict in Ulrich's section. He stated that nobody likes Ulrich.

Even if you are one of Ulrich's favorites you are not safe. He stated that one of the favorites of Ulrich had gotten into Ulrich's face because that person wanted out of the shop. Rather than moving that person, Ulrich moved him, ████, instead.

On the day of the incident he believes that Sidbury was acting supervisor but not for his deck. It was also his understanding that Sidbury told the safety person to get a camera and take a photograph. He then stated that he thought that Johnson was the manager of A and B deck that day, and does not know what deck Sidbury was the supervisor of.

He does not know if an incident report was written. He did not see one.

He was interviewed by a Boeing investigator. The investigator wrote a report and sent it to HR and Safety. It was a handwritten statement, which he signed. He did not receive a copy of the statement.

He again stated that Ulrich does not like Sidbury and Johnson. He also states that Ulrich acts like "I'm God, and do as I say."

He does not know why Ulrich does not like Johnson and Sidbury. He stated that Johnson is white and Sidbury is black. He does not believe that race or age has anything to do with why Ulrich does not like Sidbury and Johnson.

He was aware that on the weekend prior to this incident, when Ulrich was not working, that there was no scaffolding put around the dome when it was put in temporary. He stated that it wasn't unusual for this to be done. He also stated that because the dome did not have any scaffolding around it, Ulrich would have noticed that when he returned to work on Monday.

There were no injuries as a result of the ladder being used on the day of the incident.

He did not believe there was a stand down issued prior to the incident but that it was instituted afterward.

**14-044P**
Interview Memo – ▮▮▮▮▮
Page 3

He does know that Tony Costantino who is the safety officer did take a photograph and gave it to Ulrich who took it to HR.  Again, he stated that it was his understanding that Sidbury asked Costantino to take the photograph.

He is not aware of any time that Sidbury has ever mistreated or disobeyed Ulrich or the 747-8 leadership.  He describes Sidbury as a really nice guy and a good guy to work for.

He is not aware of any other issues between Sidbury and Ulrich.

He again stated that Ulrich does not like Sidbury and Johnson, but does not believe that it is due to race or age.  Again, he stated that Ulrich is not liked by the employees in the section.

At 5:36 p.m. ▮▮▮▮ had nothing further to add and this interview concluded.


JP:nbc



**STATE OF WASHINGTON**

# HUMAN RIGHTS COMMISSION

711 South Capitol Way, Ste. 402 • PO Box 42490 • Olympia, WA 98504-2490
(360) 753-6770 • 1-800-233-3247 • FAX (360) 586-2282
www.hum.wa.gov

November 5, 2013

Joseph Sidbury
27928 - 22nd Ave South
Federal Way, WA 98003

RE:    Your Intake Questionnaire/Complaint
       WSHRC Complaint # 31EA-0277-13-4

Dear Joseph Sidbury:

This letter is to acknowledge that the Washington State Human Rights Commission (WSHRC) has recently received your Intake Questionnaire (IQ) in which you allege a discriminatory practice and possible violation of the *Washington Law Against Discrimination–RCW 49.60 and the Age Discrimination in Employment Act.* The date that the WSHRC received your complaint will be used as your filing date to satisfy the statute of limitations for filing a discrimination charge. If you have employment allegations that are also subject to Federal law, your complaint was dually filed with the Equal Employment Opportunity Commission (EEOC). (See the enclosed EEOC notice of charge letter.)

Your Intake Questionnaire/Complaint has now been assigned to me for review and evaluation under discrimination law. To begin the investigation into the allegations you raised in your complaint, I plan to contact you by telephone within two weeks to discuss your complaint and answer any questions you may have.

If I am not successful in reaching you within the next two weeks, please feel free to contact me at the number below to schedule an interview.

At a later date you *may* be sent a perfected charge that you will be required to sign and return.

Please be sure to promptly respond to my phone call, and notify me of any address or phone number change or of any prolonged absence from home. If my attempts to reach you have been unsuccessful over a 30-day period, I may administratively close your case. If you have any questions, or if I may be of assistance in this matter, please contact me directly by calling (253) 591-5931.

Sincerely,

Andreta Armstrong
Civil Rights Investigator



# WASHINGTON STATE HUMAN RIGHTS COMMISSION
## EMPLOYMENT INTAKE QUESTIONNAIRE

Description of treatment: _____

c. Of the persons in the same or similar situation as you, who was treated the *same as* you?

Full Name: Monzelle McWilliams _____

  Protected Class(es) (see section 4, page 2) African American _____

Description of treatment: suspended demoted _____

Full Name: Ervin Beachum _____

  Protected Class(es) (see section 4, page 2) African American _____

Description of treatment: In less that six-months found new job _____

← Answer questions 9-11 only if you are claiming discrimination based on *disability*. If not, skip to question 13. →

9). Please tell us if you are a person with a disability.

Check all that apply:

  ☐ Yes, I am a person with a disability.

  ☐ I am not a current person with a disability, but I was previously.

  ☐ No disability, but the organization treats me as if I am a person with a disability.

10). What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit your from doing anything? (For example: lifting, sleeping, breathing, walking, caring for yourself, working, etc.).
_____

11). Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?  ☐ Yes ☐ No

If "yes", what medication, medical equipment or other assistance do you use? _____
_____

12). Did you ask your employer for any changes or assistance (reasonable accommodation) to do your job because of your disability?  ☐ Yes ☐ No

If "yes", when did you ask? _____ How did you ask? (verbally or in writing) _____

Who did you ask? (Provide full name and job title of person) _____

Describe the changes or assistance that you asked for: _____
_____

How did your employer respond to your request? _____

13). Are there any witnesses to the alleged discriminatory incident(s)? If yes, please identify them below and tell us what information they have about the discrimination. (Please attach additional pages to complete your response).

  a. Full Name: Kirk Mcmillan _____ Relationship: peer

  Contact: Phone 425-750-4958 _____ Email: _____

  Address: _____ City _____ State _____

  What information does this person have? Seen general manager talk to black managers, treated them differently

  b. Full Name: Winston Johnson _____ Relationship: peer

  Contact: Phone 425-266-9743 _____ email: _____

## WASHINGTON STATE HUMAN RIGHTS COMMISSION

## INVESTIGATIVE FINDING/CLOSURE RECOMMENDATION

**CASE NAME:** Joseph B. Sidbury v. The Boeing Company
**CASE #:** 31EAZ-0277-13-4
**EEOC CASE #:** 38G-2014-00074
**FILING DATE:** 10-14-2013

**COMPLAINANT:** Joseph B. Sidbury
**RESPONDENT:** The Boeing Company

PURSUANT TO RCW 49.60.240 THIS COMPLAINT WAS ASSIGNED TO COMMISSION STAFF FOR INVESTIGATION AND ASCERTAINMENT OF THE FACTS ALLEGED IN THE COMPLAINT. THE RESULT OF THE INVESTIGATION IS SUMMARIZED BELOW.

THIS COMPLAINT FILED WITH THE COMMISSION IS RECOMMENDED FOR CLOSURE DUE TO THE FOLLOWING REASON:

FINDING OF FACT/ADMINISTRATIVE CLOSURE/GENERAL: Prior to filing the instant complaint, Complainant filed a charge with the Equal Employment Opportunity Commission (Charge number 551-2013-01537), which addressed the same issues alleged in the instant complaint. The EEOC has already commenced the investigation and proceedings are continuing by this federal agency. Therefore, since this complaint is being adjudicated in another forum, the Human Rights Commission will administratively close this case. [RCW 49.60.226] [WAC 162-08-099(4)]

EXPLANATION OF FINDING: An **Administrative Closure** is an official termination of the work on a complaint prior to the completion of the entire statutory process, letting the complaint lie in its present posture, when the complaint has been resolved, or adjudicated in another forum, or when the Complainant cannot be found, or when circumstances justify administrative closure. This Commission action does not preclude the Complainant from filing a civil action in a court of competent jurisdiction (RCW 49.60.030[2]). It should be noted that private civil actions must be filed in a court within limited time periods from the date of the alleged unfair practice.

*Laurie Rasmussen (by LB)*                    3/18/2014
Investigator: Laurie Rasmussen                         Date

*(signature)*                                  3/18/2014
Specialist: Janice Whitman                             Date



STATE OF WASHINGTON

# HUMAN RIGHTS COMMISSION

711 South Capitol Way, Ste. 402 • PO Box 42490 • Olympia, WA 98504-2490
(360) 753-6770 • 1-800-233-3247 • FAX (360) 586-2282
www.hum.wa.gov

## NOTICE OF COMMISSION ACTION

| COMPLAINANT | RESPONDENT |
|---|---|
| Joseph B Sidbury | The Boeing Company |
| 27928 – 22nd Ave South | 3003 W Casino Road |
| Federal Way, WA  98003 | Everett, WA  98204 |

**Case Number:**   31EA-0277-13-4          **Date Filed:**   October 14, 2013
**EEOC Number:**   38G-2014-00074

**DATE AND MAILING OF THIS NOTICE:**    MAR 2 8 2014

**COMMISSION ACTION:   ADMINISTRATIVE CLOSURE;**
                                              **GENERAL/RESOLVED/JURISDICTION**

Final Commission action has been taken on the above referenced complaint.   A copy of the
finding is attached.

The Commission has the authority to reconsider its final decision if specific conditions are met.
**Please carefully read and follow the instructions on the attached sheet if you wish to
request a reconsideration of this finding.**

Sincerely,

*Laura Skinner*

Laura Skinner
Commission Clerk

Cc: David Wherch

31EA-0277-13-4                                                                                      ActionLetter

Hi I'm a 29 year employee of the Boeing, recently as a Production Manager for the 747-8 of Special Assignments, I was summoned to my the Director's (Jerry Mills) where I was suspended and demoted with a reduction in pay($10,758), by my boss(Russel Ulrich) they charged me with witnessing an unsafe act, was witness a unsafe act, problem with this is that I was not there when this act started, when I was alerted of action by my employee, this action was already happening I demanded the Supervisor (Rick Johnson) to stop & his reply was "I got this" don't worry about it, I instructed my employee to take pictures that were used as "safety moment" those picture were then give to my boss by my employee per my instructions. These circumstances come after several oppressive issue with my boss, the seems like there is discrimination, harassment involved.

1). In Jan 2013 upon his arrival he did not help or assist with developing my PM(performance management) intern for the year, instead he told me how lacked value, and that I didn't as much as the other managers,

2). As the Manager on "Special Assignments" he choose to give 8-88 project to another manager younger white male, because he wanted to give him visibility.

3) He moved to A-Deck where this younger white manager was to do his work and on an occasion call me to his office with two younger white male manager present insulted me for not doing my job when I complete the required task for that day.

4) Upon notifying my boss of a headcount shortage as major constraint, he started doing barchart audits to cherry-pick items that could completed that would make the number do better rather that what the conditions actually were, he did not perform this audit in other areas, to understand the requirement.

5) In less than thirty days time I was moved out of the new assignment back to a desk, he said I want meeting his targets, and the other manager didn't was the new assignment.

6) I filed a EEO complaint with the company in Jun 2013

I do have documents to show the trail

Thanks Sincerely

J.B. Sidbury, 206-819-2884

Manager in Manufacturing Operation, however this company continues to hold those down that speak-up or is not "House Slave" mentality.

Sincerely

J.B. Sidbury (Sid.)

747-8 Manager

On 24 June 2013, after 27 M-days of a assignment in the 747-8 46/48 FAIT A-Deck the *second-level* manager(Russ Ulrich) moved, me out, to reassign the Manager I replaced, while I understand that it's the second-level decision to make changes, it's also the second-level inherited expectation to be fair & equal treatment when it comes to performances opportunities, to remove any manager from an area that is readily suffering critical-path constraints, such as a Pressure-Dome reallocations, or jigged-lock for two NCR's in stress-engineering, or open bar-line(5) due to lack of assigned mechanics, is to demonstrate a perceived assessment of the Manager without equal opportunity to demonstrate the attribute to recover.  This disturbing reality has driven this note to ask you to review, investigate, assign or reassign such situation.

This particular second-level has had some type of issue we me since their arrival in Jan. 2013 with the comments of *not having value as K level manager to recently auditing the line bar-charts, to direct the* I.E. to change projected commitments of the day.  He expressed to me that he can't understand my writing or emails an literally has counseled me on this, in today's society with emails and abbreviated text, such session have no-value,  as person a of color with clear Diversity in roads his approach and remarks to me are oppressive, bias, & lack Diversity knowledge. Again I was moved to A-Deck on or about the w/e 15 may 2013, at that time the current manager (Eric Bay) nor our boss disclosed that the area was short headcount or presented a plan to correct the concern, when I approach my boss a with remedy  I was  told to make it work, another occassion when I didn't update him at noon, on the first day of new expectations he had set in a managers meeting, I was summoned to his office to receive a verbal warning, of failure to follow those expectations in less than 24 hrs, with HR *representative* present, during his verbal undress it was said that I had missed commitment by ten three days in a row, when I asked to see this there was no data to support however HR put this in their minutes, when I asked about the headcount shortfall in relationship to the commitment I told regardless of that I should be able to make it,  again on Friday at bout two o'clock he called a meeting at his office, he said again that he couldn't understand my end-of-shift-summary note, when I got there two other young managers plus my boss were going over may completions for the day to make sure I had made it as "the person of color had not skills or ability to do what they said.  Recently the second-shift manager had a major accident and fail to report or page the leadership yet nothing to the extent of what had happen to me has happen with that or other white managers concerning these issues.

Its with a heavy heart of concern that I J.B. Sidbury forward you this situation, my current boss(Russ Ulrich), as a twenty-nine year Boeing employee I find my boss approach very oppressive, bias, and discriminatory, it has the atmosphere of the "Good Slave Master" in they think they're doing good not allowing  African-Americans us to use our mental skills or education .

Any questions or concern to product fact or data please contact J.B. Sidbury or call 253-740-2551. Its requested that a review of these actions to understand why, as, a person over 40, of African-American heritage, with twenty-nine years of experience is being singled-out without cause, no equal time or opportunity, in that no other area manager has had to be oppressed by continued bar-chart reviewed, or removed from an area in short a time-span.  With this type of tenure with Boeing, educational credentials, and experience other than being Africa-American I would be a Director or VP/General

**551-2013-00848U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Seattle Field Office

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA  98104-1061
Seattle Direct Dial: (206) 220-6884
FAX (206) 220-6911

September 16, 2013

Joseph Sidbury
27928 22nd Ave. S.
Federal Way, WA 98003

Refer to EEOC Charge No. 551-2013-01497

Dear Mr. Sidbury:

Your correspondence concerning allegations of employment discrimination has been reviewed. The information you gave us is not enough to determine how we should handle this case. More information is needed before we can continue. Our experience is that an interview is the best way to obtain the needed information. Please call us as soon as possible. **To arrange for an interview, please call our office at (206) 220-6884 to make an appointment, during our office hours of Monday-Friday, 8 a.m. to 4:30 p.m.** If you have to call long distance, please call collect. When you call or visit, please give your name, the above inquiry number and mention that you are responding to this request to schedule an interview.

The Commission's regulations require that you notify this office of any change in your address and telephone number, and that you keep us informed of any prolonged absence from your current address.

We are unable to investigate your concerns without an interview and your charge may be dismissed in **30 days** if you do not contact us to schedule an interview. If your charge is dismissed, we will dismiss your case and issue you a Notice of Right to Sue, which will enable you to file your own private lawsuit in Federal court.

Sincerely,

Isabel Jeremiah
Investigator Support Assistant

Enclosure with EEOC
Form 131-A (11/09)

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge — the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods — generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

Section 1602.14 Preservation of records made or kept. . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

EEOC FORM 131-A (11/09)

# U.S. Equal Employment Opportunity Commission

PERSON FILING CHARGE

```
Joseph Sidbury

THIS PERSON (check one or both)
[X] Claims To Be Aggrieved
[ ] Is Filing on Behalf of Other(s)
```

THE BOEING COMPANY
3003 W Casino Road
Everett, WA 98204

EEOC CHARGE NO.
38G-2014-00074

FEPA CHARGE NO.
31EA027734

## NOTICE OF CHARGE OF DISCRIMINATION in Jurisdiction Where a FEP Agency Will Initially Process
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[ ] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[X] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____
                                                   *(FEP Agency)*

[X] The Washington State Human Rights Commission   and sent to EEOC for dual filing purposes.
                                                   *(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if it is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given the weight EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s):  Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race   [ ] Color   [ ] Sex   [ ] Religion   [ ] National Origin   [X] Age   [ ] Disability   [ ] Retaliation   [ ] Genetic Information   [ ] Other

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| November 4, 2013 | Michael Baldonado, District Director | FOR YOUR RECORDS |

Statement of _Joseph Sidbury_

took over this work area, they were in the "red," but bar chart audit didn't start until I took over this position. Also, Ulrich could recommend readjusting the positions in other groups, so we could all be in the "green," but he hasn't made any effort to do that. Ulrich also moved 2 employees from Beachum's group to my group even though Beachum was at 100% with his headcount while Mitch Owensby was above his headcount.

I've talked with other manager (peers – Jeff Forshee, Mitch Owensby, Larry Gates) regarding this issue and they also say that I have a target on my back or that he doesn't like me. Ulrich also gives me negative feedback in front of my peers. When Ulrich reviews the plans and commitments, he says these are "his" commitments – it shouldn't be identified as "his" commitments, since these are the company's commitments. Ulrich also sets unbelievably high expectations, which I can't meet. The other day, he gave me a verbal warning for not returning his call – when an employee was injured during 2nd shift, that employee's manager, Aryn Escudero, didn't even page the 2nd level manager. Even though it's a standard process to page the 2nd manager, Escudero didn't receive any type of corrective action for failing to follow the process.

Ulrich's not interested in my career development; he only gives recognition to young managers. If Ulrich continues being my manager, my career path will be threatened. I want him to understand what he's doing – that he has issues with people with color that has a vision for the company.



"I have had the opportunity to review and make changes to the preceding information. Therefore, the above statement is true and accurate to the best of my knowledge."

Signature _____     Date _2 Jul 13_

Received by Signature: _____     7/2/13



**BOEING PROPRIETARY**

EQUAL EMPLOYMENT OPPORTUNITY (EEO)
Notice of Confidentiality and Prohibition Against Retaliation

Equal Employment Opportunity investigations deal with sensitive information and may be conducted under authorization of the Boeing Law Department. Because of the sensitive nature of such information, you are directed not to discuss this case with any Boeing employee other than company employees who are investigating this issue or your union representative, if applicable. Doing so could impede the investigation and/or divulge confidential information to other employees.

As a participant in the investigation, the information you provide will be treated in a sensitive manner, however the investigator will not promise absolute confidentiality. Information regarding the investigation may be disclosed to person(s) on a need to know basis.

Please contact the investigator if you have any questions in this matter. If any coworker or manager asks to discuss the case with you, please inform him or her that you have been instructed not to discuss it and refer the individual to the EEO office.

The company prohibits retaliation against any individual who makes an EEO complaint or participates in an investigation. If you believe that you or any other individual has been subjected to retaliation because you either filed a complaint or participated in an investigation, immediately contact the EEO office at _____ Everett, WA

The EEO Investigator has advised me of the EEO investigative process and the appeal options available to me (if applicable). I have read and understand the above confidentiality and prohibition against retaliation expectations.

Thank you for your participation and cooperation in this investigation.

_____  Employee Printed Name

_____  Employee Signature    2 Jul 13  Date

**BOEING PROPRIETARY**

BOEING is a trademark of Boeing Management Company
F70094 REV (05 AUG 2010)

Global Diversity and Employee Rights
EEO Compliance



Date: 6/25/13   7/2/13  *SrC*

I, Joseph Sidbury (BEMS 18398), freely and voluntarily furnish the following statement to Kathy Cho EEO Investigator of The Boeing Company.

I have been employed by The Boeing Company for approximately 29 years. My manager is Robert Ulrich. I have been assigned to him/her for approximately 6 months.

I believe I'm being singled out by my manager, Robert Ulrich, due to my race. I was recently reassigned and moved out of A-deck due to not meeting his commitments – I was assigned to this group for only 27 M-days; there was no opportunity to fail or succeed in this position. Ulrich gave no input or feedback regarding the issues that he had with my performance. I'm the only manager in Ulrich's group that gets scrutinized and micromanaged on the daily activities– I believe other managers are being treated with more leniency. There were a couple of catastrophic failure in other groups (broken ankle), but Ulrich didn't address these issues with the same kind of scrutiny.

When I met with Ulrich to discuss PM in 1/2013, he said that my position wasn't of value. After I spoke with Ulrich several times regarding this comment, he then said that it was valuable to the organization. Ulrich had other issues with people of color outside of my work area. Kirk McMillan, Morizelle McWilliams, and Ervin Beachum have discussed this concern with me, but I'm not sure if they ever reported it. These were the black managers that have had issues with Ulrich – McWilliams was demoted from 1st line to IAM or salary because he was out of his area on more than one occasion. Ulrich previously gave him a warning. McMillan (QA manager) and Ulrich had a conversation about issues with what QA was finding in the open forum, to put McMillan in his place – it should have been discussed between the two; not in front of other employees. When I spoke with McMillan, he said that he would talk with his manager about Ulrich. Beachum had an issue with what Ulrich told him to do; it became a verbal warning. Wayne Pesznecker was moved from lower lobe to B-deck because Ulrich saw him as a roadblock for not going to 2nd shift to train people. Ulrich could have moved 4 people from 2nd shift to 1st shift for this training – which is a traditional way to do it. Johnson also has had run-ins/direct encounters with Ulrich.

I also talked with my HRG, Donald Haapala, regarding this issue and he said that he wasn't familiar with my group's line of work, so he didn't know how to discuss it with Ulrich – especially since he's 2nd level. Winston

Ulrich also conducted bar chart audit only in my area for past 2 weeks. Ulrich would come by and change the commitment and tell the IE to update the chart. I'm the 1st line manager, so I have a better idea of what is acceptable, but he doesn't seem to care about that. Ulrich also doesn't allow me to provide any explanation when his commitments are not met. I've inquired IEs (Frank Nguyen, Chris Crossfield) about doing bar chart audits in other areas, and they said that Ulrich only does it in my work area. Even before I

**"I have had the opportunity to review and make changes to the preceding information. Therefore, the above statement is true and accurate to the best of my knowledge."**

_____          2 Jul 13
Signature                                                          Date

Received by Signature: _____          7/2/13

BOEING is a trademark of Boeing Management Company
Word version of Form F70092          Page 1 of 2          Global Diversity and Employee Rights
EEO Compliance

Seattle Office for Civil Rights

# Intake Questionnaire

**Submitted Online Date: Tuesday, July 09, 2013**

Thank you for completing the Seattle Office for Civil Rights (SOCR) online Intake Questionnaire. This form provides us with information we can use to help us serve you. It is not a formal complaint. Once we receive your completed questionnaire, we will review it and then contact you for more information. Please click here to print this page for your records.

To avoid delays in processing, please submit only one Intake Questionnaire to SOCR (either by mail, online, or in person) regarding the same matter.

This form has been submitted to: SOCRIntake@Seattle.Gov

| | | | |
|---|---|---|---|
| First Name: | **Joseph** | Last Name: | **Sidbury** |
| Middle Initial: | **B** | | |
| Street Address: | **27929 22nd Ave S** | | |
| City: | **UNI** | State: | **WA** |
| Zip Code: | **98003** | County: | **King** |
| Home: | **253-946-7550** | | |
| Work: | **253-740-2551** | | |
| Cell: | **253-740-2551** | | |

Which telephone number should we use to contact you? **Home**

Email Address: **SID27923@comcast.net**

BEST IMAGE POSSIBLE

How did you hear about SOCR? **webpage**

Do you require language interpretation? **No**

If yes, what kind:

Do you require sign language interpretation? **No**

If yes, what kind:

Who can we contact if we are unable to reach you?

| | |
|---|---|
| Name: | **Diane** |
| Daytime Phone: | **253-945-7550** |
| Relationship: | **wife** |

I believe I have been discriminated against in: **Employment**

I believe I have been discriminated against because of my: **[illegible], Race, Color, Retaliation**

What employer, housing provider, business, organization or City of Seattle Department do you believe discriminated against you?

| | | | |
|---|---|---|---|
| Name: | **Boeing** | | |
| Street Address: | **3707** | | |
| City: | **SEA** | State: | **WA** |
| Zip Code: | **98124** | County: | **King** |
| Telephone: | **253-740-2551** | | |

Name of person(s) whom you believe discriminated against you: **Robert Russel Ulrich**

When did this occur (please select a date): **06/25/2012**

Where did this occur: **Everett Factory**

What happened to you? How do you feel you were discriminated against? (1,000 characters max)

**On 24 June 2012, [illegible] (Russ Ulrich) moved, [illegible] changes, [illegible] opportunities, to [illegible], such as a Pressure-**

**ATTACHMENT 4**





**ATTACHMENT 5**

30 July 2013

Subject: Appeal Request

To: ECA PM

This memo is to request an appeal and or hearing of a corrective action issued to J.B. Sidbury (18398) on 18 Jul 13, of a unsafe act as noted in PRO-1909.

Regarding the incident itself I (J.B. Sidbury) was not there when this action was developed, processed, or acted upon, once altered of the action in flow, I left my office area about 150 feet from the incident to further investigate, upon my arrival the mechanics were finishing this act & told me to talked to "Rick", I asked the safety-focal(Anthony Costantino) for the MBU to take pictures, this was a effort to get these mechanics to stop any other action, to be use as safety-moment, and file a near-miss report by the area-supervisor. As I went upstairs to communicate with the area manager he (Rick A. Johnson) told me to stay out it. I replied that this was a really unsafe condition and that I plan to talk it at the safety meeting that day, there was no reply.

At the investigation interview there was no indication from anyone or the investigator that I (J.B. Sidbury) had participated in or supported such action.

Months after this incident I have seemly been found guilty of another managers decision to perform this unsafe act, these mechanics were not assigned to J.B. Sidbury, nor the statement-of-work.

As a former U.S. Air Force Officer – Air Operations, 29 years of Boeing experience, I'm very concern with the process by which it was deem that I supported such a incident. And would appreciate a review and or hearing, to review anything that I may have said during an intake interview that may have missed-led anyone. I do not support, advocate, or create the atmosphere of unsafe conditions

Sincerely

J.B. Sidbury

**ATTACHMENT 6**

# TIME OFF FROM WORK NOTICE

DATE: 07/18/13

NAME: . Joseph Sidbury          BEMSID: 18398

SUBJECT:    TIME OFF FROM WORK WITHOUT PAY

You are being given time off without pay due to your failure to take appropriate
action when you witnessed employees engaging in unsafe actions.

Your time off without pay will begin at end of your shift today, 07/18/13 and end
at the start of your shift on 07/26/13.

R. Russ Ulrich -
Manager

DJ Haapala -
Human Resources Generalist

ATTACHMENT 7

**J. B. SIDBURY  Phone: (253) 740-2551**
**OBJECTIVE:**  A leadership position within Operations: Industrial Engineering, Manufacturing, Finance or Budgets.

Competencies: * Manage metrics for multiple Tracks to successfully meet Quality, Cost, Delivery, Safety & Morale (QCDSM) goals for Rate Based Demand (RBD) relationship between Feeder Lines and Spares Customers for delivery schedule * Have lead multi-functional teams such as current assigned Fabrication Tracks and Change Broad business systems.* Provides the most ergonomic and safe work space, for all IPT members involved with keeping the area safe.  * Change Agent Leader of Cross-Cultural differences of a diverse workforce, for best business practices transformations.  * Demonstrated coaching techniques to maximize each team member's growth potential, thorough QTTP, Extended Education, and Company Training* Kaizen Leader of lean activities for continuous process improvement with each AIW (accelerate improvement workshop) or TOC (theory of constraint) application.  * A demonstrated record or excellent Boeing Management Attributes for change initiatives such as value stream mapping, earned value management and human dimensions, improves scheduling, analytical skills, and cost concerns.

**EXPERIENCE:** 747 Major Assembly Leader: responsible for developing maintaining, metric related to Quality, Cost, Delivery, Safety & People (QCDSP) within the 46/48 section Teams. Boeing (Everett, WA) 5/07-Present

Industrial Engineer/MA: responsible for developing maintaining, set-up and run standards, Quality, Cost, Delivery, Safety & Morale (QCDSM) and offload metrics for assigned machining tracks and bench mechanics, and ITAR coordinator/focal.  Boeing (Auburn, WA) 9/02-4/07

Methods Analyst: responsible developing stable standard metrics for 777-300ER empennage configuration, in a Lean Production System environment.  Boeing (Puyallup, WA) 6/01-02

Major Assembly Supervisor / Composite Manufacturing Center :  Responsible for personnel and equipment for proper build-up and installation of all parts for the Leading-Edge and Forward Box Ribs common to the 777 Horizontal and Vertical Stabilizers, within disciplined Tak-Time, while meeting Quality and Cost to Customer Demand. (Everett delivery center) Boeing (Puyallup, WA), 9/97-6/2001

Industrial Engineer:  777 Systems Installation. Boeing (Everett, WA), 2/93-8/97
Methods Analyst/Design Built Team 704/705. Boeing (Renton, WA), 2/91-1/93

Line Supervisor: responsible for management, assembly, and installations that made the Nose Assembly for the MD-80 in Department 546. McDonnell Douglas (Long Beach, CA), 3/85-11/90
Methods Analyst: responsible for the development and implementation of Operational Sequence Charts (OSC). McDonnell Douglas Aerospace (Long Beach, CA), 7/83-3/85
Captain USAF: managed personnel, equipment, facilities, and aircraft for the Air Terminal Operation Center, (Norton Air Force Base, CA), 1/81-6/83
Lieutenant USAF: managed personnel, equipment, Air Transportation Operation Control Officer Facilities, and aircraft. (Kadena, Japan) 4/77-12/80.

**EDUCATION:**
    M.A. S. in Aerospace Management, Mar. 2006    Embry-Riddle Aeronautical University,
    BS in Industrial Technology May 1976     N.C. Agric. / Tech. State University
    Boeing Pre-Management Cert., 1993    McDonnell Douglas Management Course, 1986
    Safety Officer School, Cert., 1978    Air Transportation School, Cert., 1978
    Transportation Officer School, Cert., 1977    Transition to Management Cert., 1999
**Community Service:**
THS (therapeutic health Services) : Committed to rebuilding the community with focus on families, member of Board of Directors, Vice President- May 05- present day.
Compass Center: Focus on reducing homeless and providing daily essentials to mankind. Member of Board of Directors Sept.97 - May 04

**ATTACHMENT  8**

I would recommend starting with him, again, only because he has a clear understanding of the team.  Let me know how that goes and I'd be happy to step in if necessary.


**Kate Lykken**
**Airplane Programs 747 Operations HR Leader**
Desk: (425) 717-5390 | Cell: (425) 971-2341


**From:** Sidbury, Joseph B
**Sent:** Monday, June 17, 2013 7:49 AM
**To:** Lykken, Kate M
**Subject:** RE: A-Deck

        I don't mind talking with DJ as a manager I just want to the right thing, I haven't been involved with this type of thing


**From:** Lykken, Kate M
**Sent:** Monday, June 17, 2013 7:29 AM
**To:** Sidbury, Joseph B
**Subject:** RE: A-Deck

Hi Joe,

Have you met with your HRG of Record DJ Haapala?  I would recommend that you touch base with him as he would have a clearer understanding of the work statement and area.

I am happy to sit down with you, but would need to bring in DJ to shed light on things.  Let me know.


**Kate Lykken**
**Airplane Programs 747 Operations HR Leader**
Desk: (425) 717-5390 | Cell: (425) 971-2341


**From:** Sidbury, Joseph B
**Sent:** Sunday, June 16, 2013 7:19 AM
**To:** Lykken, Kate M
**Subject:** A-Deck


        Hi Kate, Its with much distress that I'm sending you this note recently I was assigned to the A-Deck portion of 46/48 FAIT which Russ Ulrich is the General, since that time I discovered that it was significantly under man, that wasn't revealed by the out-going manager or the General, yet I have been heavily macro managed, without merit, verbally counseled, for failure to return a phone-call & a e-mail, last week the general did what deemed an audit & Friday the commitment entered was updated by the general, without consideration for the WIP in the area, compared to any

From: Trotta, Kimberly A
Sent: Wednesday, June 12, 2013 12:17 PM
To: Ulrich, Robert R; Sidbury, Joseph B
Cc: Bay, Eric A; 'jmaynard@triumphgroup.com' <jmaynard@triumphgroup.com>
Subject: Re: Line 1483 structures help requested. Oil can in 48 section.

Thank you.
Kimberly Trotta
Final Assembly Functional Test
Senior Manager
425-876-1495 cell

----- Original Message -----
From: Ulrich, Robert R
Sent: Wednesday, June 12, 2013 12:15 PM
To: Sidbury, Joseph B
Cc: Trotta, Kimberly A; Bay, Eric A; 'jmaynard@triumphgroup.com' <jmaynard@triumphgroup.com>
Subject: Re: Line 1483 structures help requested. Oil can in 48 section.

Sid,
Please send Scotty down the LN 1483 to work this issue right away.

Thanks
Russ Ulrich
General Manager
747-8
46 / 48 Section FAIT
425-876-8815

----- Original Message -----
From: Bay, Eric A
Sent: Wednesday, June 12, 2013 12:09 PM
To: Ulrich, Robert R
Cc: Trotta, Kimberly A
Subject: RE: Line 1483 structures help requested. Oil can in 48 section.

Oil can condition from supplier. NCR requires two stiffeners fabricated 20" long.

This could be completed in one shift.

Eric A Bay      1st Shift
747 Manufacturing Manager
46/48 Section Body Structures
Cell Phone: 425-312-5216

-----Original Message-----
From: Ulrich, Robert R
Sent: Wednesday, June 12, 2013 12:04 PM
To: Bay, Eric A
Cc: Trotta, Kimberly A
Subject: Fw: Line 1483 structures help requested. Oil can in 48 section.

Eric,
Please give me a summary of what the issue is asap.

2

Thanks
Russ Ulrich
General Manager
747-8
46 / 48 Section FAIT
425-876-8815


----- Original Message -----
From: Trotta, Kimberly A
Sent: Wednesday, June 12, 2013 12:02 PM
To: Ulrich, Robert R
Subject: Line 1483 structures help requested. Oil can in 48 section.

Russ,
Please take a look at this ncr in the 48 section.  I am requesting structure mechanic help.
We have ordered material.
N1660332650 line 1483.
Kimberly
Kimberly Trotta
Final Assembly Functional Test
Senior Manager
425-876-1495 cell

This message has been processed via your triumphgroup.com e-mail address.

3

## Sidbury, Joseph B

**From:** Haapala, Donald J
**Sent:** Wednesday, June 19, 2013 8:43 AM
**To:** Sidbury, Joseph B
**Subject:** RE: A-Deck

Anytime till 10am, or 1:30 to 2:30.  I'll reserve the time for now.  Let me know when you want to talk.


Thanks,

DJ
747 HR Ops
425-717-5026

**From:** Sidbury, Joseph B
**Sent:** Tuesday, June 18, 2013 11:49 AM
**To:** Haapala, Donald J
**Subject:** RE: A-Deck

        Anytime after your one o'clock

**From:** Haapala, Donald J
**Sent:** Monday, June 17, 2013 2:32 PM
**To:** Sidbury, Joseph B
**Subject:** RE: A-Deck

Hey Sid,
Yes, we can talk.  I am open pretty much all day (except 11am-1pm).  Let me know what time you were thinking.   We can loop Kate in (as needed) too.

Thanks,

DJ
747 HR Ops
425-717-5026

**From:** Sidbury, Joseph B
**Sent:** Monday, June 17, 2013 8:12 AM
**To:** Haapala, Donald J
**Subject:** FW: A-Deck

At your first available opportunity

        Thanks

        Sid.

**From:** Lykken, Kate M
**Sent:** Monday, June 17, 2013 7:52 AM
**To:** Sidbury, Joseph B
**Subject:** RE: A-Deck

1

# Sidbury, Joseph B

**From:** Costantino, Anthony P
**Sent:** Friday, August 02, 2013 5:46 AM
**To:** Sidbury, Joseph B
**Subject:** RE: IRS

Hum I know it was a day we had safety council...Wednesday.....Oh crap I think it was just prior to 5/20......by a week or 2 may 8th or 15th I do not recall the exact date.....but I think the photo was sent to Dana Henery from your e-mail....( I looked at mine and I did not send it )

**From:** Sidbury, Joseph B
**Sent:** Friday, August 02, 2013 5:34 AM
**To:** Costantino, Anthony P
**Subject:** RE: IRS

Ok, Thanks what was the date of that incident

Sid.

**From:** Costantino, Anthony P
**Sent:** Friday, August 02, 2013 5:30 AM
**To:** Sidbury, Joseph B
**Subject:** RE: IRS

No IRS that I know about....Hope you are doing well....!

**From:** Sidbury, Joseph B
**Sent:** Friday, August 02, 2013 5:19 AM
**To:** Costantino, Anthony P
**Subject:** FW: IRS

Toney, If there were a IRS ???????

**From:** Sidbury, Joseph B
**Sent:** Thursday, August 01, 2013 8:33 AM
**To:** Pinta, Mark A
**Subject:** IRS

Mark, Do you know if there was a IRS written on the incident with the mechanics moving the reallocate pressure-dome a few months (3) with the ladder, if so what was the number .

Thanks

Sid.

1

## Sidbury, Joseph B

**From:** Haapala, Donald J
**Sent:** Wednesday, June 19, 2013 9:37 AM
**To:** Sidbury, Joseph B
**Cc:** Ulrich, Robert R
**Subject:** Action required: Issue CA for employees today (end of shift)!
**Attachments:** Harper, Randall_135809.pdf; Herzog, Lee_134930.pdf; Pike, James_2123438.pdf; Rush, Stephen_95450.pdf; Suspension Notice - Time Off From Work Notice_Harper.doc; Suspension Notice - Time Off From Work Notice_Herzog.doc; Suspension Notice - Time Off From Work Notice_Pike.doc; Suspension Notice - Time Off From Work Notice_Rush.doc

Hi Sid,

Here's the corrective action for the employees involved in the unsafe act.
Based on the HR Investigation, PRO 1909 and ECAPR, it was determined that the following Corrective Action should be given to:

- **Randy Harper (135809)** - TOFW - 1 day
- **Lee Herzog (134930)** - TOFW - 1 day
- **James Pike (2123438** - TOFW - 1 day
- **Stephen Rush (95450)** - TOFW - **3** days

**Company Violation: #5:** Build and Maintain a Safe and Healthy Environment for Our Employees, Customers, Suppliers, and Local Communities
**Specific Code:** 5D - Safety/Health

Russ mentioned that they are to be suspended at end of shift **today** for 1 day TOFW suspension (off Thursday). You will need to administer each CA, collect their badge, walk them off property and hand 1-page TOFW suspension sheet with badge to security (so they can pick-up badge on Friday).

Since Stephen Rush is out, you will have to do his suspension next week Monday end of shift (so off Tues, Wed, Thurs).

Please provide all signed CAMs to me within 2 days.

Let me know if you have any questions.

Thanks,

**DJ Haapala, PHR | HR Generalist**
[illegible]
**Desk: 425.717.5026 Cell 425.299.6655**

## Sidbury, Joseph B

| | |
|---|---|
| **From:** | Haapala, Donald J |
| **Sent:** | Wednesday, June 19, 2013 1:48 PM |
| **To:** | Sidbury, Joseph B |
| **Subject:** | Help needed? |

Hi Sid,

I understand you are issuing the CA today at end of shift. I tried calling, but no answer. I see that you called. Just wondering if you need any help or if you are coming up here with the employees?

Thanks,

DJ Haapala, PHR | HR Generalist

Desk: 425.717.5026  Cell 425.299.6655

1

## Sidbury, Joseph B

| | |
|---|---|
| **From:** | Ulrich, Robert R |
| **Sent:** | Tuesday, June 04, 2013 4:05 PM |
| **To:** | Sidbury, Joseph B |
| **Cc:** | Haapala, Donald J; Mills, Jerald L |
| **Subject:** | FW: Expectations.docx |
| **Attachments:** | Expectations.docx; RE: EOSS (1.42 KB); Re: Today's Commitment (993 bytes) |

Sid,

When you sent me your end of shift tie-in (attached) indicating that you won't make your plan today, I got concerned because when we met as a team yesterday, I specifically asked all of the supervisors if you can support the requirements outlined in the attachment, which would include mid shift updates if you are not going to make your plan. As you remember, each of the supervisors agreed to support these requirements, including yourself. One minute after you sent your end of shift e-mail, I sent a response back to you asking you to call me because you are not following this agreement, I also called you on the phone number that you gave me as an interim due to your phone have been stolen... I have yet to receive a call back

Earlier in the day when I e-mailed you asking if you were going to meet your commitment because your job sells were low, it appeared that you were going to make your commitment, which was an assumption on my part only because you didn't provide enough specifics. I did follow up with an e-mail asking you for clarification, but I never did get a response back.

You must improve your communication on your daily progress to the plan and commitments made as questions arise..

Previously I asked our I.E manager to assist you in developing your daily plan, the process we use, bar chart usage, etc., not to mention I also asked the previous supervisor of CC 328 / 311 to help you understand how to make your commitments, which since I have not heard back from you in needing help, I am assuming you understand the process.

If you feel that you need some additional help, please let me know and we will do what we can to assist, but regardless of knowing how to make the daily commitment, you have an obligation to communicate the progress to the plan plus answer questions for clarification as needed.

Sid,

I am sending you this e-mail as a written warning that you must follow the agreed upon process steps as identified in the attachment. Additional failures may lead to more formal action. I will follow up with a verbal conversation tomorrow morning on these expectations.

Please call me when you get in tomorrow.

Thanks

Russ Ulrich
747-8 Program
46 / 48 Sections
Manufacturing General Manager
Cell: 425-876-8815
MC, OJ-35

**From:** Hendry, Dana
**Sent:** Monday, June 03, 2013 2:58 PM
**To:** Bay, Eric A; Beachum, Ervin J; Escudero, Aryn C; Forshee, Jeffery A; Hadl, Behrouz A; Hendry, Dana; Owensby, Mitchell N; Sidbury, Joseph B; Ulrich, Robert R; Urrutia, Roman M
**Subject:** Expectations.docx

1

**ATTACHMENT 9**

# Los Angeles Times   ARTICLE COLLECTIONS

← Back to Original Article

California / News and Insight on Business in the Golden
State | THE STATE / AEROSPACE

## McDonnell Must Pay $28 Million in Bias Case

July 08, 1998 | Stephen Gregory

A jury ordered McDonnell Douglas to pay $28 million to a former employee who sued the company for retaliation after he filed an age and racial discrimination complaint against the former aircraft maker. After a five-week trial, the Los Angeles County Superior Court jury awarded Gerald Verdine, 58, of Carson $2 million in compensatory damages and $26 million in punitive damages stemming from his 1996 lawsuit against the company, which was acquired last year by Seattle-based Boeing Co. "The jury told McDonnell Douglas that this conduct was reprehensible and that they should never do this to another employee," said Larry Feldman, Verdine's attorney. McDonnell Douglas attorney John Golper could not be reached for comment. On his 30th anniversary at the company's Long Beach manufacturing plant, Verdine was fired without warning, Feldman said. Verdine, who is black, then sued the company for race discrimination and retaliation. The March 1996 termination came about four years after Verdine filed a complaint with the federal Equal Employment Opportunity Commission, claiming he had been laid off in spring 1992 because of his age and race. Feldman said the company settled that claim and reinstated Verdine after vowing not to retaliate against him.

**Los Angeles Times**  Copyright 2013 Los Angeles Times

Index by Keyword | Index by Date | Privacy Policy | Terms of Service

**ATTACHMENT 10**



STATE OF WASHINGTON
# HUMAN RIGHTS COMMISSION
711 South Capitol Way, Ste. 402 • PO Box 42490 • Olympia, WA 98504-2490
(360) 753-6770 • 1-800-233-3247 • FAX (360) 586-2282
www.hum.wa.gov

## NOTICE OF COMMISSION ACTION

**COMPLAINANT**
Joseph B Sidbury
27928 - 22nd Ave South
Federal Way, WA  98003

**RESPONDENT**
The Boeing Company
3003 W Casino Road
Everett, WA  98204

**Case Number:**    31EA-0277-13-4          **Date Filed:**    October 14, 2013
**EEOC Number:**   38G-2014-00074

**DATE AND MAILING OF THIS NOTICE:**    MAR 2 8 2014

**COMMISSION ACTION:     ADMINISTRATIVE CLOSURE;
                                                GENERAL/RESOLVED/JURISDICTION**

Final Commission action has been taken on the above referenced complaint.   A copy of the
finding is attached.

The Commission has the authority to reconsider its final decision if specific conditions are met.
**Please carefully read and follow the instructions on the attached sheet if you wish to
request a reconsideration of this finding.**

Sincerely,

Laura Skinner
Commission Clerk

Cc: David Wherch

31EA-0277-13-4                                                                                      ActionLetter

## WASHINGTON STATE HUMAN RIGHTS COMMISSION

## INVESTIGATIVE FINDING/CLOSURE RECOMMENDATION

**CASE NAME:** Joseph B. Sidbury v. The Boeing Company
**CASE #:** 31EAZ-0277-13-4
**EEOC CASE #:** 38G-2014-00074
**FILING DATE:** 10-14-2013

**COMPLAINANT:** Joseph B. Sidbury
**RESPONDENT:** The Boeing Company

PURSUANT TO RCW 49.60.240 THIS COMPLAINT WAS ASSIGNED TO COMMISSION STAFF FOR
INVESTIGATION AND ASCERTAINMENT OF THE FACTS ALLEGED IN THE COMPLAINT. THE
RESULT OF THE INVESTIGATION IS SUMMARIZED BELOW.

THIS COMPLAINT FILED WITH THE COMMISSION IS RECOMMENDED FOR CLOSURE DUE TO THE
FOLLOWING REASON:

FINDING OF FACT/ADMINISTRATIVE CLOSURE/GENERAL: Prior to filing the instant complaint,
Complainant filed a charge with the Equal Employment Opportunity Commission (Charge number
551-2013-01537), which addressed the same issues alleged in the instant complaint. The EEOC has
already commenced the investigation and proceedings are continuing by this federal agency.
Therefore, since this complaint is being adjudicated in another forum, the Human Rights
Commission will administratively close this case. [RCW 49.60.226] [WAC 162-08-099(4)]

EXPLANATION OF FINDING: An **Administrative Closure** is an official termination of the work on a
complaint prior to the completion of the entire statutory process, letting the complaint lie in its
present posture, when the complaint has been resolved, or adjudicated in another forum, or when the
Complainant cannot be found, or when circumstances justify administrative closure. This
Commission action does not preclude the Complainant from filing a civil action in a court of
competent jurisdiction (RCW 49.60.030[2]). It should be noted that private civil actions must be
filed in a court within limited time periods from the date of the alleged unfair practice.


_Laurie Rasmussen (by LB)_                          3/18/2014
Investigator: Laurie Rasmussen                       Date


_J. Whitman_                                        3/18/2014
Specialist: Janice Whitman                           Date


SfAcDupEEOC                                         Rv# 2.1, 8-6-99

**ATTACHMENT 11**

On 24 June 2013, after 27 M-days of a assignment in the 747-8 46/48 FAIT A-Deck the second-level manager(Russ Ulrich) moved, me out, to reassign the Manager I replaced, while I understand that it's the second-level decision to make changes, it's also the second-level inherited expectation to be fair & equal treatment when it comes to performances opportunities, to remove any manager from an area that is readily suffering critical-path constraints, such as a Pressure-Dome reallocations, or jigged-lock for two NCR's in stress-engineering, or open bar-line(5) due to lack of assigned mechanics, is to demonstrate a perceived assessment of the Manager without equal opportunity to demonstrate the attribute to recover. This disturbing reality has driven this note to ask you to review, investigate, assign or reassign such situation.

This particular second-level has had some type of issue we me since their arrival in Jan. 2013 with the comments of not having value as K level manager to recently auditing the line bar-charts, to direct the I.E. to change projected commitments of the day. He expressed to me that he can't understand my writing or emails an literally has counseled me on this, in today's society with emails and abbreviated text, such session have no-value, as person a of color with clear Diversity in roads his approach and remarks to me are oppressive, bias, & lack Diversity knowledge. Again I was moved to A-Deck on or about the w/e 15 may 2013, at that time the current manager (Eric Bay) nor our boss disclosed that the area was short headcount or presented a plan to correct the concern, when I approach my boss a with remedy I was told to make it work, another occassion when I didn't update him at noon, on the first day of new expectations he had set in a managers meeting, I was summoned to his office to receive a verbal warning, of failure to follow those expectations in less than 24 hrs, with HR representative present, during his verbal undress it was said that I had missed commitment by ten three days in a row, when I asked to see this there was no data to support however HR put this in their minutes, when I asked about the headcount shortfall in relationship to the commitment I told regardless of that I should be able to make it, again on Friday at bout two o'clock he called a meeting at his office, he said again that he couldn't understand my end-of-shift-summary note, when I got there two other young managers plus my boss were going over may completions for the day to make sure I had made it as "the person of color had not skills or ability to do what they said. Recently the second-shift manager had a major accident and fail to report or page the leadership yet nothing to the extent of what had happen to me has happen with that or other white managers concerning these issues.

Its with a heavy heart of concern that I J.B. Sidbury forward you this situation, my current boss(Russ Ulrich), as a twenty-nine year Boeing employee I find my boss approach very oppressive, bias, and discriminatory, it has the atmosphere of the "Good Slave Master" in they think they're doing good not allowing African-Americans us to use our mental skills or education .

Any questions or concern to product fact or data please contact J.B. Sidbury or call 253-740-2551. Its requested that a review of these actions to understand why, as, a person over 40, of African-American heritage, with twenty-nine years of experience is being singled-out without cause, no equal time or opportunity, in that no other area manager has had to be oppressed by continued bar-chart reviewed, or removed from an area in short a time-span. With this type of tenure with Boeing, educational credentials, and experience other than being Africa-American I would be a Director or VP/General

Manager in Manufacturing Operation, however this company continues to hold those down that speak-up or is not "House Slave" mentality.

*Sincerely*

J.B. Sidbury (Sid.)

747-8 Manager

Hi I'm a 29 year employee of the Boeing, recently as a Production Manager for the 747-8 of Special Assignments, I was summoned to my the Director's (Jerry Mills) where I was suspended and demoted with a reduction in pay($10,758), by my boss(Russel Ulrich) they charged me with witnessing an unsafe act, was witness a unsafe  act , problem with this is that I was not there when this act started, when I was alerted of action by my employee, this action was already happening I demanded the Supervisor (Rick Johnson) to stop & his reply was "I got this" don't worry about it, I instructed my employee to take pictures that were used as "safety moment" those picture were then give to my boss by my employee per my instructions.  These circumstances come after several oppressive issue with my boss, the seems like there is discrimination, harassment involved.

1). In Jan 2013 upon his arrival he did not help or assist with developing my PM(performance management) intern for the year, instead he told me how lacked value, and that I didn't as much as the other managers,

2). As the Manager on "Special Assignments" he choose to give 8-88 project to another manager younger white male, because he wanted to give him visibility.

3) He moved to A-Deck where this younger white manager was to do his work and on an occasion call me to his office with two younger white male manager present insulted me for not doing my job when I complete the required task for that day.

4) Upon notifying my boss of a headcount shortage as major constraint, he started doing barchart audits to cherry-pick items that could completed that would make the number do better rather that what the conditions actually were, he did not perform this audit in other areas, to understand the requirement.

5) In less than thirty days time I was moved out of the new assignment back to a desk, he said I want meeting his targets, and the other manager didn't was the new assignment.

6) I filed a EEO complaint with the company in Jun 2013

I do have documents to show the trail

Thanks Sincerely

J.B. Sidbury, 206-819-2884