THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH SIDBURY,<br><br>    Plaintiff,<br><br>    v.<br><br>BOEING,<br><br>    Defendant. | CASE NO. C14-1446-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Boeing's Motion for Summary Judgment (Dkt. No. 32).  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the Motion for the reasons explained herein.

I.    BACKGROUND

On August 22, 2014, Plaintiff Joseph Sidbury filed a pro se complaint against Boeing in King County Superior Court, alleging employment discrimination based on his race, age, and veteran status, in violation of the Washington Law Against Discrimination, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act of 1967.  (Complaint, Dkt. No. 1, Ex. A at 3.)

The situation giving rise to Plaintiff's claims are as follows.

Plaintiff Joseph Sidbury, a 60 year-old African American man and former United States

Air Force Captain with a Master's degree in Aeronautical Science, was employed as a line supervisor on Boeing's 747 assembly line. (Defendant's Motion for Summary Judgment, Dkt. No. 32 at 1-2; Plaintiff's Declaration re Motion for Summary Judgment, Dkt. No. 39 at 1.) Mr. Sidbury occupied the same managerial level as a Mr. Rick Johnson, a Caucasian man. (Plaintiff's Response, Dkt. No. 39 at 2.)

In May 2013, an assembly line worker who was also designated as a safety coordinator approached Mr. Johnson to report a safety violation being committed by mechanics who were part of Mr. Johnson's team. (Motion, Dkt. No. 32 at 2; Response, Dkt. No. 39 at 2.) Plaintiff states that Mr. Johnson ignored the report of the violation, as did other Caucasian supervisors who that safety coordinator next alerted as to the violation. (*Id.*) The safety coordinator then asked Mr. Sidbury to address the violation. (Sidbury Declaration, Dkt. No. 39 at ¶6.) Mr. Sidbury went over to the mechanics and said "[h]ey, can't y'all do this better than this? . . . This is very unsafe." (Sidbury Deposition, Dkt. No. 36, Ex. A at 32.) The mechanics did not desist in the safety violation and told Mr. Sidbury to go talk to their manager, Mr. Johnson. (Plaintiff's Response, Dkt. No. 39 at 2.) Plaintiff went to speak with Mr. Johnson, (again, his managerial peer) on an upper level of the plant, but Mr. Johnson told Mr. Sidbury that he "had it handled and you return to your office!" (Sidbury Declaration, Dkt. No. 39 at ¶7.) As Mr. Sidbury was walking up the stairs to speak to Mr. Johnson, the safety coordinator took a picture of the unsafe act, at Mr. Sidbury's request, and Mr. Sidbury subsequently gave the picture to Mr. Russ Ulrich, a Caucasian man who was Mr. Sidbury's and Mr. Johnson's own manager. (Plaintiff's Response, Dkt. No. 39 at 3.)

The safety coordinator then filed an internal complaint with Boeing complaining that both Mr. Johnson and Mr. Sidbury had failed to stop the unsafe act. (Motion, Dkt. No. 32 at 3-4.) In response, an HR representative conducted an investigation, and concluded that both supervisors had failed to stop the unsafe act. (*Id.* at 4.) The HR report was submitted to Boeing's Employee Corrective Action Review Board. (*Id.*) The ECARB recommended that

both Mr. Sidbury and Mr. Johnson be given a Corrective Action Memo and a five-day suspension. (*Id.*) Jerry Mills, the 747 Director, decided that both Mr. Sidbury and Mr. Johnson should be demoted out of management in addition to receiving CAMs and being suspended. (*Id.*)

In the instant Motion, Defendant Boeing states that Mr. Sidbury's claims of race and age discrimination should be dismissed on summary judgment because he was treated exactly the same as Mr. Johnson, because he was replaced by another African American male of similar age after his demotion, and because his supervisor Mr. Ulrich "was similarly demanding and critical of other first line supervisors." (Motion, Dkt. No. 32 at 1-2.) Because there remain genuine disputes of material fact regarding each of Mr. Sidbury's claims and because Boeing cannot show that it is entitled to judgment as a matter of law, Defendant's Motion must be denied.

## II.   DISCUSSION

### A.   Legal Standard

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. If, as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party . . . , [the court] must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan,* 705 F.3d 1021, 1026 (9th Cir. 2013). Disputes of fact are "genuine" when "a reasonable jury could return a verdict for the nonmoving party" on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes of fact are "material" if the fact "might affect the outcome of the suit under the governing law." *Id.*

In resolving summary judgment motions, courts are not at liberty to weigh the evidence, make credibility determinations, or draw inferences from the facts that are adverse to the non-

moving party.  As the Supreme Court has held, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment." *Id.* at 255.

However, to prevent summary judgment, the nonmoving party must make a showing via affidavits, depositions, answers to interrogatories, or admissions of "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

### B.	Plaintiff's Claims and Disputed Facts Regarding these Claims

#### 1.	*Plaintiff's Claims of Unlawful Demotion*

Mr. Sidbury claims that he was demoted because of his race and age, in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Washington Law Against Discrimination.  (Complaint, Dkt. No. 1, Ex. A at 3.)

To survive summary judgment on this claim, Plaintiff must establish that there are genuine disputes of material fact with regard to each element of a prima facie case.  Disparate treatment cases often require that: 1) the plaintiff belongs to a protected class; 2) the plaintiff suffered some type of adverse job action; 3) the plaintiff had been doing satisfactory work; and 4) the plaintiff was replaced by someone outside the protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) (applying this framework to Title VII case); *Pottenger v. Potlatch Corp.,* 329 F.3d 740, 745 (9th Cir. 2003) (applying the *McDonnell Douglas* framework to an ADEA claim); *Chen v. State*, 86 Wash. App. 183, 189 (1997) (applying the *McDonnell Douglas* framework to a WLAD claim).

Defendant does not dispute the first two of these elements.

Defendant does dispute the third element, that Plaintiff had been doing satisfactory work before he was demoted.  Defendant argues that Plaintiff could not have been doing satisfactory work, because he "failed as a Boeing supervisor to stop an ongoing safety violation." (Motion, Dkt. No. 32 at 12.)  But this is bootstrapping.  Plaintiff heartily contests that he failed to do everything he could to stop the safety violation that gave rise to this suit.  Plaintiff argues that

such explanation for his demotion is pretextual, and that the true reason for his demotion and discipline was his race and age. Plaintiff presents the Court with several facts that establish genuine disputes as to this issue – Plaintiff avers that Mr. Johnson, not he, was directly in charge of the crew committing the safety violation (Sidbury Declaration, Dkt. No. 39 at ¶¶4, 5, 6); Plaintiff, unlike Mr. Johnson, confronted the crew members about the unsafe act, but they did not change their behavior and told Mr. Sidbury to go talk to their supervisor about it (*id.* at ¶6); and Plaintiff confronted Mr. Johnson, the crew's direct supervisor, about the unsafe act but Mr. Johnson told Mr. Sidbury that he had it covered and that he should return to his office (*id.* at ¶¶6, 7).

On summary judgment, the court must take the evidence and draw all reasonable inferences in the light most favorable to the non-moving party, and is not at liberty to weigh the evidence, make credibility determinations, or draw inferences from the facts that are adverse to the non-moving party. Averments made in affidavits are considered evidence sufficient to create genuine disputes of material fact. *Celotex Corp.,* 477 U.S. at 324. Further, Defendant does not present the Court with any evidence that any of these aforementioned three points are false. These points create a genuine dispute of material fact with regard to Plaintiff's pre-demotion performance.

Defendant also disputes the fourth element, that Plaintiff was replaced by someone outside his protected class. Defendant states that Plaintiff and Mr. Johnson were replaced by a 54 year-old African American man and by a 52 year-old Caucasian man. (Motion, Dkt. No. 32 at 13 (citing Ulrich Declaration, Dkt. No. 33 at ¶8).) But Plaintiff disputes this fact as well, and avers that this 54 year-old African American man was a replacement for either an Elmer Barton, who retired, or an Ervin Bechum, who switched positions, and that regardless of whoever *ultimately* came to occupy his former managerial position, he was *initially* replaced by a younger, less qualified Caucasian man, a Mr. Bay. (Sidbury Declaration, Dkt. No. 39 at ¶15.) Plaintiff presents the Court with external evidence supporting this – in June 26, 2013 email

apparently from Mr. Ulrich with the subject line "Manager Concerns – Joseph Sidbury," Mr. Ulrich reports that "[t]o start . . . [he] moved Eric Bay from A deck into the BPS support role on 5/21." (June 26, 2013 Email, Dkt. No. 39, Ex. A.) Further, Plaintiff avers that Mr. Ulrich had previously announced in a meeting that he wanted to replace Mr. Sidbury with someone younger. (Sidbury Declaration, Dkt. No. 39 at ¶14.) There is a clear dispute of material fact with regard to Mr. Sidbury's replacement, making summary judgment inappropriate on this matter.

Finally, Defendant states that, overall, Plaintiff cannot show that he was treated any differently than someone outside the protected class, because Mr. Johnson, who is Caucasian and who was also found to have failed to stop the safety violation, received the exact same discipline in terms of a demotion and a five-day suspension. (Motion, Dkt. No. 32 at 13.) However, as stated above, Plaintiff avers that Mr. Johnson, not he, was directly in charge of the crew committing the violation (Sidbury Declaration, Dkt. No. 39 at ¶¶4, 5, 6); Plaintiff, unlike Mr. Johnson, confronted the crew members about the unsafe act, but they did not change their behavior and told Mr. Sidbury to go talk to their supervisor about it (*id.* at ¶6); and Plaintiff confronted Mr. Johnson, the crew's direct supervisor, about the unsafe act but Mr. Johnson told Mr. Sidbury that he had it covered and that he should return to his office (*id.* at ¶¶6, 7).

Again, Defendant does not directly refute any of these points. This creates a genuine dispute of material fact with regard to whether Mr. Johnson was more culpable than Plaintiff for the alleged safety violation, yet received the same punishment.

2. *Plaintiff's Claims of Retaliation/Harassment/Hostile Work Environment*

Mr. Sidbury claims that Mr. Ulrich retaliated against him by "removing [him] from an assignment within less than 30 days . . . not giving [him] the adequate opportunity to complete . . . the challenge" because Mr. Sidbury filed a complaint against Mr. Ulrich with Boeing's EEO, based on Mr. Ulrich's purported harassment of Plaintiff. (Sidbury Deposition, Dkt. No. 36, Ex. A at 129-130.) Defendant states that it should be granted summary judgment on this retaliation claim because, Defendant argues, the reason for Mr. Sidbury's removal was that Plaintiff

"continued to miss his commitment by 10 or more jobs most days without reason, plus missing his daily management requirements, ongoing failures in holding his crew accountable and . . . he didn't understand the impact of the lap rework." (Motion, Dkt. No. 32 at 14 (citing July 15, 2013 email, Dkt. No. 33, Ex. 1).)

However, Plaintiff presents this Court with evidence that, when inferences are made in the light most favorable to the non-moving party, lends support for a finding that this reason was pretextual – Plaintiff explains in his Declaration that Mr. Ulrich's failure to respond to his requests for the manpower he needed to stay on schedule was the true cause of his performance shortcomings. Specifically, Plaintiff avers that "[t]here was actually not enough personnel or scheduled overtime to make up for shortfalls in the daily workload. I repeatedly advised Mr. Ulrich that the bar chart and budget showed we did not have the allotted headcount to complete the task and the Industrial Engineering Manager confirmed that we needed more manpower." (Sidbury Declaration, Dkt. No. 39 at ¶16 (citing Ex. 7).) Plaintiff continues "[w]hen I repeatedly reminded him that there was a headcount shortage in A-deck, Ulrich demanded that I 'find a way!' He finally requested more headcount days before I was demoted." (*Id*.) Plaintiff also explains that "Ulrich claimed that I was the cause of the area being 'red' [and] that it was 'green' prior [to] [me] being installed as the Area Manager," despite the fact that "the area assigned was clearly 'red' before I was assigned." (*Id.* (citing "Behind Schedule Metrics").) This constitutes evidence sufficient to establish a genuine dispute of material fact with regard to whether Mr. Ulrich retaliated against Plaintiff for his protected action.

Next, Defendant argues that Plaintiff's claims of harassment and hostile work environment must be dismissed because: a) there is no evidence that Mr. Ulrich treated Plaintiff any differently because of his race or age; and b) Plaintiff's harassment claim, Defendant argues, is "based on his assertion that the fact that Ulrich is a demanding manager of *all* employees had a greater emotional impact on Sidbury because of his experiences growing up black in the American South." (Motion, Dkt. No. 32 at 15 (citing Sidbury Dep., Dkt. No. 36, Ex. A at 209-

212).) However, the evidence set forth in the previous paragraph, if interpreted in the light most favorable to the non-moving party, could support a finding that Ulrich *did* single Plaintiff out for stricter treatment/ attributed blame unfairly to him. And, as this Court explained in the Order Denying Defendant's Motion for Sanctions, the deposition testimony cited by Defendant is certainly amendable to interpretations quite different than the one advanced by Defendant. (*See* Order, Dkt. No. 42 at 5.) Finally, Plaintiff does not concede, as Defendant implies, that Mr. Ulrich treated all of his workers similarly harshly – "Mr. Ulrich treated me differently than he treated Rick Johnson and other similarly situated managers." (Sidbury Declaration, Dkt. No. 39 at ¶18.) Thus, summary judgment on the retaliation/harassment/hostile work environment claim is likewise inappropriate.

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 32) is DENIED.

DATED this 28th day of July 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE